CLINIQUE LABORATORIES,
INC., Plaintiff,

v.

DEP CORPORATION d/b/a Basique
Labs, Inc., Defendant.

No. 96 Civ. 7045 (SAS).

United States District Court,
S.D. New York.

Oct. 10, 1996.

Robert J. Bernstein, Richard S. Mandel, Sheri L. Gelfond, Cowan, Liebowitz & Latman, P.C., New York City (Lee Puccini, Lesley A. Moradian, of counsel), New York City, for Plaintiff.

Terrence J. Connolly, John P. Coffey, John T. Brennan, Latham & Watkins, New York City, for Defendant.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Plaintiff Clinique Laboratories, Inc. ("Clinique") moves, pursuant to Fed.R.Civ.P. 65, for a preliminary injunction prohibiting defendant Dep Corporation, d/b/a Basique Labs, Inc. ("Dep" or "Basique") from infringing plaintiff's trademarks, trade dress, and/or trade name in the sale, distribution, or advertising of skin care, hair care, cosmetic, toiletry or fragrance products. Clinique brings these infringement claims pursuant to Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(a), and under New York State unfair competition law. In addition, Clinique seeks to enjoin Dep from diluting the value and distinctiveness of its trademarks and trade dress under Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and the New York Anti–Dilution Statute, § 368–d of the New York State General Business Law. Finally, under the Copyright Act, 17 U.S.C. § 101 *et seq.,* Clinique seeks to enjoin Dep's use of an advertisement that allegedly infringes three of Clinique's copyrights. For the reasons set forth below, Clinique's motion is granted in part and denied in part.

## II. FACTUAL BACKGROUND

Clinique is a wholly owned subsidiary of Estee Lauder, Inc., and was launched in 1968. Clinique manufactures makeup, skin care, and fragrance products, although only their skin care products are at issue in this litigation. Between 1991 and 1995, Clinique's net domestic sales exceeded $2 billion. Their products are distributed in department stores, specialty stores, and some select drug stores, although some Clinique products are diverted from normal distribution channels to discount drug stores. One of Clinique's earliest products was its three-step cleanse, tone and moisturize system, a series of products it continues to market today. Plaintiff is the exclusive user of the CLINIQUE and CLINIQUE & C trademarks within the Estee Lauder family of companies, and has maintained the same marks and trade dress for over twenty-five years.

Dep sells hairstyling, skin care, and oral care products, including nationally known brands such as Agree shampoo, Topol toothpaste, Porcelana, Nature's Family and Cuticura skin care products. In late August 1996, Dep began a six state test market of a new line of skin care products, called "basique simplified skin care." The Basique line consists of nine products, including soap, cleansers, and toners, and is to be marketed exclusively to mass-merchandisers such as Wal–Mart and K-mart, as well as drug store chains. A national launch of the products is planned for early 1997.

Clinique learned of the Basique line when a national magazine sent Clinique a proposed Basique advertisement. Clinique then purchased the Basique line of products in one of the test market states in September 1996. Believing that the products infringed Clinique's trademarks and trade dress, and that the advertisement infringed Clinique's copyrights in its own advertisements for its three

step skin care system, Clinique moved for a temporary restraining order to prevent Dep from further marketing of the product and to force Dep to remove the product from the six test states. At an initial hearing held on September 19, 1996, Clinique agreed to withdraw its TRO request, provided that Dep did not expand its marketing or advertising of Basique beyond the six test states, pending the outcome of this motion for a preliminary injunction. An evidentiary hearing was held on September 25, 26 and 27, 1996.

## III. ANALYSIS

### 1. *Legal Standard*

A preliminary injunction is an equitable remedy meant to maintain the status quo until there can be a hearing on the merits. *See Sierra Club v. U.S. Army Corps of Engineers,* 732 F.2d 253, 256 (2d Cir.1984). The party seeking injunctive relief must establish that it will suffer

> irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the moving party's favor.

*LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 74 (2d Cir.1985); *see also Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 135–36 (2d Cir.1992). Should Clinique show a likelihood of confusion in violation of the Lanham Act on either its trademark or trade dress infringement claims, the requisite irreparable harm is established. *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.,* 832 F.2d 1311, 1314 (2d Cir.1987). A likelihood of dilution also establishes irreparable harm under Section 43(c). *Deere & Co. v. MTD Prods., Inc.,* 860 F.Supp. 113, 122 (S.D.N.Y.), *aff'd,* 41 F.3d 39 (2d Cir.1994) (citation omitted). Similarly, under copyright law, a violation of exclusive copyrights also gives rise to a presumption of irreparable harm. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985).

### 2. *Trademark Infringement*

Under Section 32(1) of the Lanham Act, Clinique seeks to enjoin Dep's use of the trademark "basique simplified skin care,"

and the single letter designation "b," alleging that the mark and designation infringe two of Clinique's registered trademarks: CLINIQUE and CLINIQUE & C DESIGN ("CLINIQUE & C"). In addition, Clinique asserts that Dep's use of "basique" and "b" constitute false designations of origin in commerce in violation of Section 43(a) of the Lanham Act.

Section 32(1) governs claims for the infringement of a registered trademark. Infringement of a registered mark includes "any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods [that is] likely to cause confusion, or to cause mistake, or to deceive...." 15 U.S.C. § 1114(1). Section 43(a) prohibits the use of

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association ... with another person, or as to the origin sponsorship, or approval of his or her goods, services, or commercial activities by another person....

15 U.S.C. § 1125(a)(1). Section 43(a) guards against infringement of unregistered marks and other indicia of origin, including trade dress and trade names. *See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (unregistered marks and trade dress); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir.1991) (trade dress); *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576 (2d Cir.1991) (trade name). To prevail on its trademark infringement claims under either Section 32(1) or 43(a), Clinique must satisfy the same test: (1) that it has a valid mark subject to protection; and (2) that defendant's mark and/or dress results in a likelihood of confusion. *See Gruner + Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1074 (2d Cir.1993); *Yarmuth–Dion, Inc. v. D'ion Furs, Inc.,* 835 F.2d 990, 992–93 (2d Cir.1987); *Corning Glass Works v. Jeannette Glass Co.,* 308 F.Supp. 1321, 1325 (S.D.N.Y.), *aff'd,* 432 F.2d 784 (2d Cir.1970).

## A. The Validity of Clinique's Marks

The parties do not dispute the validity of the CLINIQUE or CLINIQUE & C marks, for which Clinique owns federal trademark registrations incontestable under 15 U.S.C. § 1065. These registrations conclusively establish Clinique's ownership of the marks used on their skin care products. The first prong of Clinique's trademark infringement claim being satisfied, Clinique now must show that Dep's marks result in a likelihood of confusion. *See Gruner,* 991 F.2d at 1074.

## B. Likelihood of Confusion

A now-familiar, nonexclusive list of eight factors, articulated by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), structures the inquiry into likelihood of confusion. These factors are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will "bridge the gap" between the two markets; (6) the defendant's good faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of purchasers. *Id.* at 495. This test applies to both competing and non-competing goods or services. *Banff, Ltd. v. Federated Dept. Stores, Inc.,* 841 F.2d 486 (2d Cir.1988). A court's evaluation of the *Polaroid* factors should not be mechanical, nor is any single factor determinative. *Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1004 (2d Cir.1983). Rather, a court "should focus on the ultimate question of whether consumers are likely to be confused." *Paddington Corp. v. Attiki Importers & Distrib. Inc.,* 996 F.2d 577, 584 (2d Cir.1993) (citing *Lang,* 949 F.2d at 580). In answering that "ultimate question," a court may find infringement has occurred based on confusion that creates initial customer interest, even if no final sale is completed as a result. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 260 (2d Cir.

1987) (likelihood that defendant would gain "crucial credibility" during initial phase of purchase justifies finding of infringement). Post-sale consumer confusion is also actionable. *See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872–73 (2d Cir.1986); *See also LeSportsac,* 754 F.2d at 80 (after removal of defendant's identifying hangtags, products were virtually identical).

■ The ultimate question of "whether consumers are likely to be confused" must be answered in the affirmative. A visual inspection of the product lines at issue reveals that defendant has blatantly copied nine items from plaintiff's skin care line. Defendant has manufactured almost identical soap, toners, eye creams, and moisturizers, with only minuscule and insignificant changes in packaging and color. The Basique line—visually and functionally—attempts to look as much like Clinique as possible, stopping just short of using Clinique's actual marks on the products. I turn now to a discussion of each of the *Polaroid* factors.

### i. The Strength of Clinique's Marks

The strength of a mark is measured by "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979); *Paddington,* 996 F.2d at 585. An arbitrary or fanciful mark that does not directly describe the qualities of a product to which it applies is inherently distinctive and subject to protection without proof that the public associates the mark or dress with a particular source or product.[1] *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 10–11 (2d Cir.1976). Both the CLINIQUE and CLINIQUE & C marks are arbitrary designations that provide no description of the products to which each relate. Clinique's marks are therefore strong.

■ Even were this Court to require proof of secondary meaning, Clinique has present-

---

**1.** The four basic classifications of distinctiveness, arranged from least to most strong (and accordingly by the level of protection afforded) are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *See Abercrombie,* 537 F.2d at 9; *Coach Leatherware,* 933 F.2d at 170.

ed evidence sufficient to make such a finding. Clinique's domestic retail sales since 1968 have exceeded $8 billion, of which skin care products account for over 40%. *See* Transcript ("Tr.") at 37–38 (Testimony of Eunice Valdivia, Executive Vice President of Marketing for Clinique). Clinique has expended over $500 million promoting the Clinique brand, Tr. at 39 (Valdivia), and has received extensive unsolicited media coverage. Declaration of Eunice Valdivia ("Valdivia Decl."), dated Sept. 16, 1996, Ex. D. Dep's expert conceded that Clinique is a famous brand. Tr. at 238. (Testimony of Mary Goodstein, Defendant's Expert in Marketing of Women's Products with respect to Packaging and Writing Copy). Moreover, the Clinique marks have remained the same since their introduction in 1968. Tr. at 19–20 (Valdivia). Clinique's marks therefore have achieved secondary meaning.

ii. Similarity of the Marks

■ When comparing marks to determine the likelihood of consumer confusion, "the correct test is whether a consumer who is somewhat familiar with the plaintiff's mark would likely be confused when presented with defendant's mark alone." *Direct Marketing of Va., Inc. v. E. Mishan & Sons, Inc.*, 753 F.Supp. 100, 106 (S.D.N.Y.1990); *see also Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891, 893 (2d Cir. 1982); *Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.* 281 F.2d 755, 762 (2d Cir.1960). Side by side comparison is not the appropriate test. *See Direct Marketing*, 753 F.Supp. at 106; *Harold F. Ritchie*, 281 F.2d at 762. Clinique's marks, therefore, must be compared with Dep's in light of what the ordinary consumer would perceive when looking at Dep's products in isolation.

■ Not surprisingly, marks are considered similar when they are similar in appearance, sound and meaning. *Revlon, Inc. v. Jerell, Inc.*, 713 F.Supp. 93, 98 (S.D.N.Y. 1989). Starting with the respective appearances of the CLINIQUE and "basique simplified skin care" marks,[2] Clinique's mark appears entirely in upper case letters, while Dep's appears in lower case. *See* Attached Exhibit A (Reproduction of Trademarks). CLINIQUE is underscored and overscored, while "basique" is only underscored. The words "simplified skin care" in smaller, lower case letters appear below the word "basique," beneath the underscore; no comparable words appear beneath the CLINIQUE mark. The suffix of both, "ique," looks similar. In terms of sound, both words are comprised of two syllables ending in the suffix "ique," although the first syllable of each differs considerably. Both sound French. The evidence and common sense reveal that CLINIQUE connotes "clinical," while "basique" connotes the very different meaning of "basic" or "simple". Tr. at 162 (Testimony of Jean–Pierre LaCroix, Plaintiff's Expert in Product Identification and Packaging), Tr. at 212–213 (Goodstein).

Although the marks CLINIQUE and "basique simplified skin care" have similar characteristics, this factor weighs in favor of Dep for these two marks. Many other beauty care products use the suffix "ique," including SENSITIQUE, CUTIQUE and MATTIQUE, and EUROPEAN MYSTIQUE. *See* Def.'s Exs. BS, BU, BV, BW. In an attempt to distinguish these products, Clinique points out that some appear with house marks, such as L'Oreal's "Mattique" and "Sensitique," or Orly's "Cutique." While this factor may further distinguish these marks from CLINIQUE, it does not compel the conclusion that "basique simplified skin care" is confusingly similar to CLINIQUE.

Clinique also argues that the similarities of the CLINIQUE and "basique simplified skin care" marks are heightened by the similarities in the products' respective packaging. Certainly those similarities heighten the visual similarity between the marks, but such an analysis is better directed to Clinique's claim of trade dress infringement.[3] Clinique has not presented evidence sufficient to show at this stage of the proceedings that the "basique simplified skin care" mark, if used with

2. The similarities between the CLINIQUE & C mark and Dep's use of BASIQUE and the single letter "b" are discussed below.

3. This claim is addressed in Part III.3.

entirely different trade dress, would be confusingly similar to the CLINIQUE mark.

This analysis, however, does not apply to a comparison of the CLINIQUE & C mark with "basique simplified skin care" and "b" mark. Like the CLINIQUE & C mark, in which the word CLINIQUE appears in smaller print than the large and dominant "C" appearing over it, Dep's "basique simplified skin care" mark also appears in smaller print with a large, dominant "b." *See* Attached Exhibit A. Although Dep has flipped the positioning of the two, with the "b" appearing below, the overall visual effect created by the proportion between the two elements is very similar. Both Clinique's and Dep's experts testified to the visual significance in the proportion of the large, single letter designation in conjunction with the name of the product.[4] Based on the evidence, were the ordinary consumer confronted with Dep's combination mark alone, he or she might well confuse this mark for Clinique's.

█ Dep's reliance on the difference between the lower case "b" and the upper case "C" is misplaced. The sizes of the respective letters and the typefaces are similar. The ordinary consumer may well remember only a large letter appearing above the word of the mark and confuse the mark for Clinique's, or assume the product is related to Clinique. The relevant inquiry is the impression the mark as a whole creates on the average reasonably prudent buyer, and not the individual details of the mark. *See Paddington,* 996 F.2d at 584; *Direct Marketing,* 753 F.Supp. at 106. Moreover, Dep's exam-

ples of other letter designations on skin care and cosmetic products tend to show that the similarities between the CLINIQUE & C mark and "basique simplified skin care" and "b" are striking by comparison. ·*See* Def.'s Exs. P3–1, P3–2, P3–3. Because the overall impression of the "basique simplified skin care" and "b" combination is confusingly similar to the CLINIQUE & C mark, the combination of the two elements supports a finding of likelihood of confusion.

### iii. Proximity of the Products

This factor "addresses whether, due to the commercial proximity of the competitive products, consumers may be confused as to their source." *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 77 (2d Cir.1988). Proximity is measured by "the nature of the products themselves and the structure of the relevant market." *Vitarroz v. Borden, Inc.,* 644 F.2d 960, 967 (2d Cir.1981); *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 480 (2d Cir.1996). Relevant findings include "the class of consumers to whom the goods are sold, the manner of advertising, the channels through which the goods are sold, and the extent to which the goods or services fall within the same class or are used together." *Estee Lauder, Inc. v. The Gap, Inc.,* 932 F.Supp. 595, 613 (S.D.N.Y.1996).

The products at issue are nearly identical soaps, moisturizers, eye creams, and toners.[5] *See* Attached Exhibit B (Picture of Products). However, as discussed above, the usual distribution channels of the two product lines are not the same. With the exception of unauthorized diversion into discount drug

---

4. Clinique's expert testified: "The icon, the C and the B are similar in both their dominance, it's the key element you see on the packaging immediately supported by the name, Basique or Clinique. So those elements are very similar." Tr. at 150–151 (LaCroix). Dep's expert testified as follows:

> Q. In terms of the visual image on the packaging of the Basique and the C—on the Basique and the Clinique products, how would you weight the importance of the B and the C?
> A. They're of equal importance, I would say.
> Q. Are they one of the major focal points of the packaging?
> A. Yes.

> Q. And on a spectrum of similarity versus distinctness,·would you agree that the B and the C are relatively close together in image whereas the O [on Orlane] and the C are very far apart in image?
> A. That·would be fair.
> Tr. at 234. (Goodstein).

5. The products are so alike that Dep has capitalized on the similarity in its advertising. *See* Attached Exhibit D (Reproduction of Advertisement). The copy from Dep's Basique advertisements urges consumers to "[c]ompare new Basique to Clinique. It does just what Clinique does ... [o]nly without the lavish prices." *See* Pl.'s Ex. 40. *See also* discussion of Basique's trade dress, Part III.3, below.

stores, such as the Cosmetic Center where Basique is test marketing, plaintiff sells its products in so-called "class" channels of distribution, while defendant plans to sell Basique products in "mass" distribution channels.

In a similar case where plaintiff did not distribute its prestige perfume in the "mass" market, but its wholesalers did, the Court of Appeals found that the proximity factor weighed in favor of a likelihood of confusion. *See Charles of the Ritz Group Ltd. v. Quality King Distib., Inc.*, 832 F.2d 1317, 1322 (2d Cir.1987). Because plaintiff's product could be found on the same merchandiser's counters as the infringing perfume, the court found that consumers might be confused as to the infringing product's source. *Id.* Here, Clinique's and Dep's products may also be found at the same counters. As a result, a finding that the two product lines are similar is definitely warranted.

Clinique has also presented evidence of "cross-shopping," that is, when the relevant class of consumers shop in both department stores and mass market discount outlets. Tr. at 25–27, 48 (Valdivia). Dep's expert acknowledged that Dep's Basique advertisements are indeed aimed at the cross-shopper, Tr. at 254–55 (Goodstein), and that the cross-shopping phenomenon does exist. Tr. at 263 (Goodstein) ("[M]y understanding is that people will shop in both department stores and mass merchandisers, depending on need."). Moreover, Clinique and Dep advertise in the same magazines, *see* Pl.'s Exs. 46–50, 52–60. Dep has already attempted to place an advertisement for Basique products in some of those publications.[6] Valdivia Decl. ¶¶ 12–13. Dep's Chairman and President, Robert Berglass, acknowledged that Dep intended to position Basique in comparison to Clinique.[7] Berglass also testified that Basique products

are close to the high end of price in mass distribution, *see* Tr. at 284–85, while Clinique's products are at the low end of price for class distribution. Tr. at 23 (Valdivia).

In *Estee Lauder*, the court found a likelihood of confusion between Estee Lauder's "100%" mark for a skin moisturizer and The Gap's competing line of "100%" body care products, notwithstanding the different distribution channels for the two products. 932 F.Supp. at 614–15. Like Clinique in this action, Estee Lauder sold its goods only through prestige retail outlets, while The Gap sold only in its mass, middle market Old Navy stores. Specifically, the court found "that there is very substantial cross-shopping—that is to say, that consumers who shop upscale department and specialty stores also frequent stores such as Old Navy and vice versa." *Id.* at 614. Moreover, to the extent that distinct channels of trade between Dep's and Clinique's products exist, those channels have little or no bearing on post-sale confusion as to the source of the goods. *See Reebok Int'l Ltd. v. K–Mart Corp.*, 849 F.Supp. 252 (S.D.N.Y.1994), *vacated by consent*, 33 U.S.P.Q.2d 1863, 1994 WL 733616 (S.D.N.Y. Dec. 28, 1994); *T. Anthony Ltd. v. Malletier*, 30 U.S.P.Q.2d 1214, 1217, 1993 WL 659682 (S.D.N.Y. Nov. 24, 1993).

The facts with regard to proximity cut in different directions. First off, the products themselves are virtually identical. *See* Attached Exhibit B. Dep is aided, however, by the differing channels of distribution between the products. Nonetheless, the products appear in the same stores, even if Clinique might prefer it to be otherwise, and consumers therefore encounter them together. Moreover, the cross-shopping phenomenon minimizes the effect of different distribution channels. Plaintiff and defendant advertise

---

**6.** The advertisement itself is also at issue in this litigation. *See* Attached Exhibit D. The issue of the comparative nature of the advertisement, as well as the effectiveness of a disclaimer within it, is discussed below in Part III.2.B.ix.

**7.** Mr. Berglass stated:

It was extremely important to develop a department store upscale image for the products. The consumer wants to have better quality skin care products available at their convenience shopping locations en masse. Then, we tried

to give them that type of a product that would have a high quality look, high quality ingredient, yet at mass merchandising prices.

Tr. at 280. Although direct comparison of the two products, through advertising or point of sale material, might help to dispel consumer confusion, *see* Part III.2.B.ix below, a campaign to compare the two products suggests that to some degree, the products compete in the marketplace.

in the same publications. Weighing all of these considerations, the proximity of the products is sufficiently close to create some likelihood of confusion.

### iv. Bridging the Gap

Simply stated, "[t]he issue here is whether the two companies are likely to compete directly in the same market." *Charles of the Ritz,* 832 F.2d at 1322. Trademark law protects "the senior user's interest in being able to enter a related field at some later time." *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir.1976). This factor encompasses plaintiff's actual intentions to enter defendant's field, as well as consumers' possible assumptions that plaintiff has entered defendant's field despite plaintiff's lack of intent to do so. *Id.; see also Karmikel v. May Department Stores Co.,* 658 F.Supp. 1361, 1374 (S.D.N.Y.1987). Considering the evidence of cross-shopping and advertising, the "mass" and "class" markets are not truly distinct, and no gap is left to be bridged.

### v. Good Faith of the Junior User

This factor addresses "whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang,* 949 F.2d at 583 (citation omitted). The second comer has a duty to name and dress its product so as to avoid likelihood of confusion with the senior user's product. *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950, 953 (2d Cir.1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). The Court of Appeals has held that evidence of intentional copying raises a presumption that the second comer intended to create a confusing similarity. *Paddington,* 996 F.2d at 586–87; *Mobil Oil,* 818 F.2d at 258.

Here, the evidence compels the conclusion that Dep intended to copy Clinique's mark and dress.[8] *See* Attached Exhibits B & C (Picture of Packaging). The overall appearance of the two lines of products is too

similar even to entertain the idea that Dep did not mimic Clinique's mark and dress. Dep's President admitted both that Dep tried to give the consumer the Clinique department store image, Tr. at 284 (Berglass), and that Dep could have chosen packaging that looked completely different, while continuing to manufacture the same products in the same containers. Tr. at 291 (Berglass). Finally, Dep has not presented a single argument in support of its own good faith. *See* Defendant's Post–Hearing Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Def.'s Mem."). This factor weighs heavily in favor of a likelihood of confusion.

### vi. Actual Confusion

The Lanham Act does not require evidence of actual confusion as a prerequisite to recovery. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1227 (2d Cir.1987). Clinique has not presented evidence of actual confusion. Notably, Dep has not released Basique products nationally, and has conducted limited test marketing in only six states for about one month. Although Dep argues that this month presented Clinique with an opportunity to gather evidence of actual confusion, courts have found this factor insignificant when products have been competing for longer periods. *See id.* (finding lack of evidence of actual confusion unimportant considering that products competed for only four months before trial). This factor, therefore, carries no weight.

### vii. Quality of the Products

Although Clinique has not presented evidence of the Basique products' inferior quality, courts in this Circuit have held that a "lack of marked difference in quality between goods supports the inference that they emanate from the same source." *Centaur Communications,* 830 F.2d at 1228; *Lois Sportswear,* 799 F.2d at 875. At the same time, however, the quality factor protects the senior user's "good reputation associated with [its] mark from the possibility of being

---

**8.** For full discussion of the similarities between Clinique's and Basique's trade dress, *see* Part III.3 below.

tarnished by inferior merchandise." *Scarves by Vera,* 544 F.2d at 1172; *see also Cadbury Beverages,* 73 F.3d at 483 (citing *Scarves by Vera*). These two doctrines seem to conflict: goods of either equivalent or inferior quality can lead to a likelihood of confusion with the senior user's product. While the former interpretation more directly addresses the likelihood of consumer confusion, the latter emphasizes precisely why a likelihood of confusion is damaging to the senior user. Considering that Dep currently represents that Basique is as good as Clinique,[9] and mindful of the fact that Clinique cannot control the quality of Basique so that its reputation could be damaged if Basique products turn out to be inferior, I conclude that this factor weighs in favor of a likelihood of confusion.

### viii. Sophistication of Consumers

The evidence shows that most consumers of skin care products are women (and the products at issue are marketed to women), who take care in deciding what products to use on their skin, particularly the skin on their faces. Tr. at 193–94 (Goodstein). While Clinique's products are not extravagantly priced, they are sold in high quality department stores. Under these circumstances, sophistication of consumers usually militates against a finding of likelihood of confusion. *See, e.g., Revlon,* 713 F.Supp. at 99; *Plus Products,* 722 F.2d at 1007.

However, "even sophisticated buyers are not always careful buyers, and their very awareness of status brand names and designs may make them more vulnerable to confusion." *Krueger Int'l v. Nightingale, Inc.,* 915 F.Supp. 595, 611 (S.D.N.Y.1996). In addition, if the products and marks are very similar or identical, the sophistication of buyers is less likely to prevent confusion. *See McGregor–Doniger,* 599 F.2d at 1137. Here, the CLINIQUE & C mark is very similar to the "basique simplified skin care" mark used with the single letter designation "b," and the trade dress is nearly identical. Moreover, sophistication of consumers is to

be viewed in light of the conditions under which the product is purchased. *Id.*

Balancing these elements, Clinique's consumers are relatively sophisticated, but the circumstances under which they shop may diminish the effect of their sophistication. This element therefore weighs slightly in Dep's favor.

### ix. Disclaimers

■ As noted above, the list of *Polaroid* factors is nonexclusive. *See Mobil Oil,* 818 F.2d at 256. An additional factor in this case is defendant's use of comparative advertising and disclaimers on its point of sale materials. Dep alleges that these devices will dispel consumer confusion.

At the outset, it should be noted that Dep bears a heavy burden to show that its disclaimer or comparative advertisement will significantly reduce a likelihood of confusion. *See Home Box Office,* 832 F.2d at 1315–16; *Charles of the Ritz,* 832 F.2d at 1324. In *Home Box Office,* the Court of Appeals considered and rejected the claim that disclaimers are favored methods of dispelling consumer confusion. 832 F.2d at 1315. The court held that the infringer has an affirmative duty to come forward with "evidence sufficient to demonstrate that any proposed material would significantly reduce the likelihood of consumer confusion." *Id.* at 1316. The court also cited with approval the recommendation that "whenever disclaimers are considered, empirical studies should be used to evaluate their likely impact." *Id.*

Dep's advertisement has a large image of three Basique products—a soap, balancing toner, and hydrating lotion—sitting in water. *See* Attached Exhibit D (Reproduction of Advertisement). Reflected in the water are the corresponding Clinique products, each aligned with its Basique counterpart. In the upper left corner, in large type, the copy says, "Beautiful skin care shouldn't be a luxury." In much smaller type, below the visual image, the copy reads:

---

9. As noted above, Dep advertises that Basique products are of the same quality as Clinique's,

only cheaper. *See* Attached Exhibit D.

Compare new Basique to Clinique. It does just what Clinique does—cleanses, tones and moisturizes. Only without the lavish prices. And Basique is allergy tested and fragrance free. So there's really only one choice. Smart. Simple. Basique!

On the bottom of the advertisement, below a statement in boldface type with a telephone number and Internet address, in extremely small type, is a disclaimer that states: "Basique is not affiliated with Clinique Laboratories, Inc."

The evidence was mixed as to whether consumers do or do not read advertising copy; sometimes they do, sometimes they do not, depending on the product and the customer need. Tr. at 145 (LaCroix). However, Dep's expert testified, and common sense dictates, that in designing copy, the designer puts the main message in the largest type. Tr. at 244–45 (Goodstein). Both Dep's and Clinique's respective experts testified that the main message of Dep's advertisement— "Beautiful skin care shouldn't be a luxury"— was not in itself comparative, Tr. at 154 (LaCroix), Tr. at 262 (Goodstein), although Dep's expert testified that in conjunction with the visual image it becomes comparative. Tr. at 262 (Goodstein). Both Clinique's and Dep's experts testified that the advertisement is primarily visual. Tr. at 243 (Goodstein); Tr. at 154 (LaCroix). Clinique's expert also testified that, despite the comparative nature of the ad, viewers might believe Basique is a line extension of Clinique. Tr. at 152 (LaCroix). When asked why Clinique would want to "knock" its own product by comparative advertising, Mr. LaCroix replied that such advertising is the trend: "It's how they do it or the competition is going to do it to them." Tr. at 153.

Dep has not offered any empirical study to evaluate the likely impact of the disclaimers. The burden of proving that confusion will be

dispelled by the disclaimer rests on Dep. At this stage, Dep has not presented sufficient evidence to show that the disclaimer on this advertisement would have that effect.

Dep also has point of sale materials that it claims further dispel any likelihood of confusion between the products. One element of Dep's point of sale display is a horizontal version of the ad described above without some of the copy.[10] Def.'s Ex. A. This sign measures approximately 14 inches by 24 inches. In addition, Dep has designed a container in which the products are meant to be displayed. Pl.'s Ex. 62. The products are displayed horizontally, with text below reading "Step 1" above the word "cleanse," "Step 2" above the word "tone," and "Step 3" above the word "moisturize." On the left of the display is a dial of sorts, upon which "Beautiful skin care shouldn't be a luxury" appears in larger letters, with the same text as the sign printed below.[11] The dial displays information about different skin types. In very small print below the dial, the disclaimer quoted above appears. The print of the disclaimer is the smallest on the display.

Again, were customers to see and read the entire display, confusion might be dispelled. The evidence suggests, however, that the display materials might not be seen. One Cosmetics Center store neither displays the sign nor uses the display container; the products merely appear on the shelf. See Tr. at 52–58 (Testimony of Megan Ostrowsky, Private Investigator and Photographer); Pl.'s Ex. 43. Both experts testified to the practical difficulty of assuring retailer cooperation in the display of point of sale materials. Tr. at 156 (LaCroix); Tr. at 249 (Goodstein). And, as Clinique points out, Dep has had difficulty controlling the Cosmetic Center's advertising of its products even in the midst of this litigation.[12] Tr. at 300–01 (Berglass).

---

**10.** The headline on the display remains the same, but the supplemental information reads: "Compare Basique to Clinique. There's only one choice. Basique ... Simply Smarter." See Def.'s Ex. A. The disclaimer appears below, again in smaller type.

**11.** See footnote 10.

**12.** Cosmetic Center advertised Basique products in a recent customer circular covering September 29 through October 12, 1996, see Def.'s Ex. DK, as well as shipping Basique products to three Cosmetic Center stores beyond the six test states prior to this litigation. Tr. at 306 (Berglass). Both the shipping and advertising took

Certainly the issue of whether consumers read copy when buying merchandise is similar to the issue of whether they read all of the copy on an advertisement for that merchandise. However, plaintiff correctly points out that point-of-purchase displays and advertising do nothing to address the problem of post-sale confusion of non-purchasers. *See Lois Sportswear,* 799 F.2d at 872–73; *LeSportsac,* 754 F.2d at 80. A disclaimer at a store will not address this type of confusion. Because Dep has only shown at this point that its disclaimers and advertising would dispel consumer confusion in limited circumstances, this factor does not weigh in Dep's favor.

### C. Conclusion

Weighing all of the factors above, I find that plaintiff has shown a likelihood of confusion between the CLINIQUE & C mark and the use of "basique simplified skin care" with the single designation "b." The CLINIQUE & C mark is strong, the combination Basique mark has an overall similarity to the CLINIQUE & C mark, the products have a degree of proximity sufficient to lead to confusion, and Dep has exhibited bad faith by copying Clinique's mark. Moreover, Dep has not met its burden of showing that its disclaimers and advertising are likely to dispel that confusion. Because Clinique's CLINIQUE & C mark is valid, and because there is a likelihood of confusion, Dep is preliminarily enjoined from using "basique simplified skin care" and the single letter designation "b" together. Dep's use of the mark "basique simplified skin care" alone, however, is not likely to be confused with the mark CLINIQUE. The marks are not similar enough, particularly if Dep used the "basique simplified skin care" mark with different trade dress. Dep may therefore continue to use the mark "basique simplified skin care" in certain circumstances discussed below in Part IV.[13]

place without Dep's approval. Tr. at 300–01, 306 (Berglass).

**13.** The same "likelihood of confusion" test applies to Clinique's trademark infringement claim under Section 32(1), false designation of origin claim under Section 43(a), and New York common law claims. *See American Footwear Corp. v.*

Because Clinique has not demonstrated a likelihood of success on the merits with regard to the CLINIQUE mark, Clinique has not shown the irreparable harm necessary for this Court to enjoin Dep's use of "basique simplified skin care." Clinique has alleged only the harm to its reputation that might result from its inability to control the quality of Basique. In the marks' present state, however, consumers are unlikely to confuse them; they are even less likely to confuse the marks when Dep's mark is used without the "b" and with different trade dress. Clinique presented no evidence that repackaged Basique products would lead to any likelihood of consumer confusion. Clinique therefore will not suffer the alleged harm to its reputation. As Clinique has not shown irreparable harm, I need not consider whether the balance of hardships tips decidedly in Clinique's favor with respect to this mark.

### 3. Trade Dress Infringement under Section 43(a) of the Lanham Act

To prevail on its trade dress claim under Section 43(a) Clinique must show (1) that its trade dress is distinctive, and (2) a likelihood of confusion between its trade dress and Dep's. *See Paddington,* 996 F.2d at 582. Trade dress is subject to protection if it is inherently distinctive, or if it has acquired secondary meaning among the consuming public. *Id.* The distinctiveness of trade dress is divided into four categories, from least to most distinctive: 1) generic; 2) descriptive; 3) suggestive; or 4) arbitrary and fanciful. *Id.* at 583; *Abercrombie,* 537 F.2d at 9. Arbitrary and fanciful trade dress is considered to be inherently distinctive, and is subject to protection without further proof of secondary meaning. *Paddington,* 996 F.2d at 583.

■ The trade dress of a product comprises its "total image and overall appearance"

*General Footwear Co.,* 609 F.2d 655, 664 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980) (New York common law). Because the test is the same, the conclusion is the same: Dep is preliminarily enjoined from using the combination mark, but not the "basique simplified skin care" mark.

and "involves the total image of a product and may include features such as size, shape, color, texture [or] graphics...." [14] *Taco Cabana*, 505 U.S. at 765, n. 1, 112 S.Ct. at 2755, n. 1 (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)). Trade dress typically will be arbitrary and fanciful, and thus inherently distinctive, because of the virtually unlimited choices a producer has for advertising and packaging its product. *Paddington*, 996 F.2d at 583. As with composite trademarks, the court should focus not on individual elements, but "the combination of elements and the total impression that the dress gives to the observer...." *Id.* at 584. *See also LeSportsac*, 754 F.2d at 76 (finding it irrelevant that individual design features may not be subject to protection because particular combination and arrangement of elements creates valid trade dress).

■ Clinique's trade dress appears to be inherently distinctive. The specific color scheme of pastels recurs throughout the Clinique line of products, as does the silver foil stamping used for Clinique's marks as they appear on the products and packaging. The shape of the Clinique soap is unusual and apparently unique, as defendant introduced no other soap, other than its own, that approximated the shape. The arrangement of the graphics on the products and packaging, as well as the textured shading of the packaging, all comprise a distinctive arrangement of features that make Clinique's trade dress arbitrary and fanciful.[15]

■ Moreover, even were evidence of secondary meaning required, Clinique has presented evidence of sales success, advertising expenditures, unsolicited advertising, and defendant's conscious imitation of plaintiff's trade dress and trademark to support such a finding. *See* Parts III.2.B.i and III.3, above. Defendant's trade dress, in particular, compels the conclusion that defendant consciously imitated plaintiff's product line.[16] Clinique's trade dress is therefore subject to protection because it has achieved secondary meaning.

■ Having determined that Clinique's trade dress is distinctive, I now turn to the likelihood of consumers confusing Basique's trade dress for Clinique's. The only new ground that need be covered here is the strength of Clinique's trade dress, and the similarity of Basique's dress to Clinique's. The analysis of the other *Polaroid* factors, as discussed above with respect to plaintiff's trademark claims, applies equally here and need not be reexamined.

The distinctiveness of plaintiff's trade dress, and the evidence of secondary meaning, both indicate that plaintiff's trade dress is strong, so that this factor weighs in favor of Clinique. *See Paddington*, 996 F.2d at

14. Dep urges this Court to consider "the whole Clinique experience," i.e. the "pseudo-clinical setting of a Clinique counter," the white coats of the usual Clinique salesperson or "consultant," and the Clinique "computer," with which consultants determine a customer's skin type, as part of Clinique's trade dress. *See* Def.'s Mem. at 9–11. Although defendant's argument is creative, neither of the cases it cites for this proposition support such a broad theory of trade dress, nor could this Court find any such precedent. *Knitwaves Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir.1995) considered patterns on a sweater as trade dress, whereas *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir.1995) involved the format of greeting cards as trade dress. Both cases limited their discussion of trade dress to the products themselves, as will the Court in this case.

15. Although defendant introduced into evidence other products that approximated the shape of some Clinique containers, *see, e.g.*, Def.'s Exs. P2–1, P2–2, P4–2, BA–1, Clinique has not argued that the shapes of the containers themselves cannot be used by Dep. Dep argues that the containers themselves are functional because they are used by other manufacturers, but again, this argument applies only to the containers' shapes. It does not address the other design elements that comprise the Clinique trade dress: the color scheme, size of the products, graphics, etc. As noted above, the functionality of certain elements of trade dress does not render the totality of elements ineligible for protection. *See LeSportsac*, 754 F.2d at 76; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203–04 (2d Cir.1979). Dep could easily manufacture the same products with different trade dress.

16. Defendant argues that Clinique has failed to link its sales success or unsolicited advertising directly to its trade dress. Defendant has cited no authority for the proposition that the two must explicitly be linked, nor does the relevant case law require such a finding.

585. Turning then to the similarity between the two trade dresses, the evidence is indisputable that the Basique trade dress mimics the Clinique trade dress in every respect. *See* Attached Exhibits B & C. As noted above, each of the nine products in the Basique skin care line corresponds to a product that performs the same function in the Clinique line. The shape of each Basique container is virtually identical to the shape of its Clinique counterpart, as is the size of each container.

The colors of the containers of all but one product are the same; for example, Clinique's "rinse-off foaming cleanser" and Basique's "rinse away cream cleanser" are almost the same shade of pink. The one product container that differs in any noticeable respect is Basique's "rinse-off gel cleanser," which is packaged in a clear squeeze tube with a blue product inside, while Clinique's product is currently manufactured in an opaque blue tube of the same shade and size, although it was formerly manufactured in a clear tube. *See* Tr. at 73 (Valdivia). While Clinique's caps for its cleansers are "Clinique green," and Basique's are a shade of blue, the two colors are close enough on the color spectrum that should a consumer see one alone, the difference would be negligible. *See* Tr. at 151 (LaCroix); *see also* Attached Exhibit B. Both Basique's and Clinique's lettering are stamped silver foil. The colors of the products packaged in clear containers are the same, although the Clinique line has additional toners with different shades. While the Clinique moisturizer is yellow, and Basique's is a shade of pink, the bottles are almost identical in all other respects.[17]

The similarities of the products carry through to similarities in the boxes in which they are packaged. *See* Attached Exhibit C. Again, the Basique boxes are a shade of blue, while Clinique's are green, but Dep has mimicked the textured shading of the Clinique boxes, and the dimensions of the boxes are the same. Both lines use the stamped silver foil for their trademarks and copy. Overall, the minimal differences between the two are far outweighed by the striking similarity between the two lines.

In fact, Dep's President and Chairman admitted as much when he testified that he was unaware of any skin treatment product with packaging as similar to Clinique's as the packaging for the Basique line. Tr. at 288 (Berglass). Dep's expert admitted the same, as well as acknowledging that none of the other examples of competing trade dress introduced by Dep created the same commercial impression as Clinique. Tr. at 260–61. However, one does not need an expert to realize the similarities between the two: a mere glance at the two lines of products compels the conclusion that they are nearly indistinguishable. *See* Attached Exhibits B & C.

Adding the overwhelming similarity between the Basique and Clinique trade dress to the balance of the *Polaroid* factors discussed above, Clinique has established a likelihood of confusion between its trade dress and that of Basique. Because Clinique's trade dress is distinctive, and because there is a likelihood of confusion, Clinique's request for injunctive relief prohibiting Dep's use of the Basique trade dress is granted.[18]

---

**17.** In one reproduction of the Basique advertisement in evidence (the mock-up of the advertisement Dep had sent to magazines) the Basique moisturizer appears yellow, not pink-beige. *See* Tr. at 223–24 (Goodstein); Pl.'s Ex. 40. Similarly, in printouts of two of defendant's World Wide Web pages for Basique, the moisturizer is yellow. *See* Pl's Exs. 42A, 42C. In another reproduction of the advertisement submitted by defendant, the moisturizer looks the pink-beige of its actual color. *See* Def.'s Ex. DJ.

**18.** Because the test for infringement of trade dress under New York common law is the same as the test for infringement under the Lanham

Act, I reach the same result under New York law. I decline to enjoin defendant's use of the trade name "basique labs, inc." for the same reasons as I decline to enjoin defendant's use of the trademark "basique simplified skin care." *See* Part III.2, above. Plaintiff has failed to present additional evidence with respect to its trade name sufficient to show that consumers are likely to confuse the trade names of the two companies. Finally, I need not reach plaintiff's copyright claim, as I have already enjoined defendant's use of constituent elements of Dep's current advertisement for Basique, namely, the products' trade dress, and composite mark.

### 4. Trademark and Trade Dress Dilution under Section 43(c)

Alternatively, Clinique seeks to preliminarily enjoin Dep from using the Basique marks and trade dress under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).[19] A party asserting a claim of dilution bears a lighter burden than that required under Section 43(a): it is not necessary to demonstrate competition between the parties or a likelihood of confusion. *See* 15 U.S.C. § 1127. In order to prevail on its dilution claim under federal law, Clinique must demonstrate (1) ownership of a distinctive trade dress or famous mark, and (2) dilution. 15 U.S.C. § 1125(c). Dilution is defined as a "lessening of the capacity of a famous mark to identify and distinguish goods or services." 15 U.S.C. § 1127.

■ Though precise standards for analyzing dilution under Section 43(c) have not yet emerged, Section 43(c) "protect[s] famous trademarks from subsequent uses that *blur* the distinctiveness of the mark or *tarnish* or

disparage it...." H.R.Rep. No. 374, 104th Cong., 1st Sess. 3 (1995) U.S.Code Cong. & Admin.News 1029, 1030 (emphasis added). This language mirrors the traditional New York dilution analysis, under which dilution can be founded upon a showing of either blurring or tarnishment. *See, e.g., Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 506 (2d Cir.1996); *Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 42 (2d Cir. 1994).[20]

### A. Ownership of Famous or Distinctive Trademark and Trade Dress

Section 43(c) provides factors relevant to a determination of whether a mark or dress is distinctive or famous.[21] As already noted in Parts III.2 and III.3, above, Clinique's CLINIQUE & C mark and trade dress are distinctive for the purpose of an infringement claim under Section 43(a), and under the statutory factors, they are distinctive for purposes of Section 43(c) as well.

---

**19.** Section 1125(c) is entitled "Remedies for dilution of famous marks," and reads in relevant part:

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c). The statute encompasses the use of imitative as well as identical marks or dress. "Congress chose to use plain and unambiguous language to make clear that a famous mark may be diluted by the use of 'a mark,' not 'the [famous] mark.'" *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Development,* 935 F.Supp. 763 (E.D.Va. 1996) (denying motion to dismiss plaintiff's dilution claim against defendant's use of THE GREATEST SNOW ON EARTH); *See also WAWA Dairy Farms v. Haaf,* Civ.A. No. 96–4313, 1996 WL 460083 (E.D.Pa. Aug. 7, 1996) (granting WAWA food market a preliminary injunction against HAHA 24 Hr. Market under 15 U.S.C. § 1125(c)).

**20.** Like the New York statute, Section 43(c) does not expressly mention trade dress: both provide injunctive relief if a junior user's "mark or trade name" dilutes the distinctive quality of a senior mark. Trade dress dilution is actionable under

the New York statute. *See Merriam–Webster, Inc. v. Random House, Inc.,* 35 F.3d 65 (2d Cir.1994). Nothing in the language of Section 43(c) bars its application to trade dress, and such application is consistent with the United States Supreme Court's opinion in *Two Pesos,* 505 U.S. at 773, 112 S.Ct. at 2759–60 (unregistered trademarks and trade dress are entitled to the same protection under Section 43(a) of the Lanham Act as are registered trademarks under Section 32(1)). Thus, I conclude that the new federal anti-dilution statute covers trademarks and trade dress.

**21.** The factors are:

(A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(1).

### B. Dilution by Tarnishment

■ Tarnishment may occur when the plaintiff's mark is used by the defendant in association with unwholesome or shoddy goods or services. *See, e.g., Hormel,* 73 F.3d at 507; *Deere,* 41 F.3d at 43. Tarnishment may also result from an association with obscenity, or sexual or illegal activity, but is not limited to seamy conduct. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 467 F.Supp. 366 (S.D.N.Y.), *aff'd,* 604 F.2d 200 (2d Cir.1979); *Chemical Corp. v. Anheuser–Busch, Inc.,* 306 F.2d 433 (5th Cir.1962), *cert. denied,* 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963). "The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *Hormel,* 73 F.3d at 507.

■ Given the relatively limited scope of possible tarnishment claims, Clinique cannot succeed on its claim of a likelihood of dilution through tarnishment. Clinique argues that its trade mark and trade dress will be tarnished by Dep's "cheap knock-offs of the CLINIQUE line of products." However, this argument does not fit within the boundaries of tarnishment. Dep is not attempting to associate Clinique's products with obscenity or sexual or illegal activity, the Basique product line is neither shoddy or unwholesome, and no evidence suggests that Clinique's trademark or trade dress will suffer negative associations through Dep's use of the Basique mark. In the absence of such a showing, Clinique has no basis for its claim of dilution on a tarnishment theory.

### C. Dilution by Blurring

■ Dilution by blurring occurs where "the defendant uses, or modifies *the plaintiff's trademark* to identify *the defendant's goods and services,* raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere,* 41 F.3d at 43. Like tarnishment, blurring is concerned with an injury to the mark's selling power and "need not involve any confusion as to source or sponsorship." *Hormel,* 73 F.3d at 506 (quoting *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 624 (2d Cir.1983)). "[B]lurring sufficient to constitute dilution requires a case-by-case factual inquiry." *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 875 F.2d 1026, 1035 (2d Cir.1989) (Sweet, J., concurring).

■ Five factors are ordinarily relevant to assessing dilution by blurring under Section 43(c): 1) similarity of the trademarks and trade dress; 2) similarity of the products; 3) sophistication of consumers; 4) renown of the senior mark and trade dress; and 5) renown of the junior mark and trade dress.[22] *See Merriam–Webster,* 35 F.3d at 73; *see also Mead Data,* 875 F.2d at 1035. I have already determined that Basique's mark and dress are similar to the CLINIQUE & C mark and the Clinique trade dress,[23] the

---

22. Unlike the New York anti-dilution statute, predatory intent is not a factor in a dilution analysis under Section 43(c) of the Lanham Act. The owner of a famous mark is entitled only to injunctive relief upon a showing of dilution, unless it is also shown that the person against whom the injunction is sought "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2). Upon proof of willful intent, a party may obtain further relief under 15 U.S.C. §§ 1117(a) and 1118.

However, even under New York law, the dilution analysis renders the same result. I am convinced that the testimony of Mr. Berglass, in relation to Dep's "guerilla marketing" techniques, is sufficient to show that Dep fully intended to mimic Clinique's marks in order to take advantage of the image and goodwill that Clinique has built up over the last twenty-five years. Tr. at 282–284 (Berglass). Berglass' testimony tended to show that Dep's aggressive entry into the women's skin care market was intended to take advantage of Clinique's reputation among consumers, while limiting Dep's own advertising expenses. *See id.* These actions qualify as predatory intent. *See* Part III.2.B.v., above. The result under § 368–d is therefore the same.

23. The "basique simplified skin care" mark is not sufficiently similar to the CLINIQUE mark to warrant a likelihood of confusion, as analyzed in Part III.2.B.ii., above. Dilution through blurring is also likely only where the marks in question are similar, and "the more similar the marks the higher the likelihood of dilution." *See Mead Data,* 875 F.2d at 1036. No danger of blurring exists between facially dissimilar marks. *See, e.g., Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d 112 (2d Cir.1984) (difference between "King Kong" and "Donkey Kong" eliminates any question of blurring); *Warner Bros, Inc. v. American Broadcasting Co.,* 530 F.Supp. 1187

products are virtually identical, Clinique's trademark and trade dress are renowned, and Clinique's consumers are relatively sophisticated.

 The only remaining factor for dilution analysis is the renown of the junior mark, and Dep admits for the purposes of this motion that its "basique & b" mark is not famous, which tends to lessen the likelihood of dilution. *See* Def.'s Mem. at 17. In a motion such as this, however, where plaintiff seeks a preliminary injunction against a company which has just entered the market, this factor will always weigh in favor of the junior user because the junior mark will never be famous. Notably, Judge Sweet, in *Mead Data*, cited no precedent in support of the proposition that the renown of the junior mark is a factor in a blurring analysis. *See Mead Data*, 875 F.2d at 1038–39 (Sweet, J., concurring). At such an early stage of a product launch, it is just as possible that a junior mark may swallow up a senior mark, causing dilution, as it is that the sophistication of the senior mark's consumers will minimize the impact of any new mental associations with the junior mark, thereby causing no dilution. Either analytical path requires speculation. Rather than speculate, or mechanically weigh a factor in favor of a junior user, this "factor" should not be included in a dilution analysis involving the launch of a new product.

 Balancing these factors, Clinique has demonstrated a likelihood of dilution by blurring. Because Clinique has shown a likelihood of dilution, it has also shown that it will suffer irreparable harm if Dep's mark and trade dress are not enjoined. Dep is therefore enjoined from use of its composite mark, and its trade dress, under Section 43(c) of the Lanham Act.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is granted in part and denied in part. Defendants are ordered to: (1) recall all Basique products currently distributed to any retailer in the six test states or elsewhere; (2) cease from using in connection with the manufacture, distribution, sale, advertisement or promotion of skin care products: a) the trademark "basique simplified skin care" in combination with the single letter "b" designation and b) the Basique trade dress. Defendants may continue to use the "basique simplified skin care" mark in a manner consistent with this opinion.

SO ORDERED.

(S.D.N.Y.1982), *aff'd*, 720 F.2d 231 (2d Cir.1983) ("Superman" mark too different from "Greatest American Hero" to support blurring claim). Because the CLINIQUE and "basique simplified skin care" marks are facially dissimilar, dilution is unlikely.