201 F.3d 168 (2nd Cir. 2000)
 FEDERAL EXPRESS CORPORATION, Plaintiff-Appellant,
v.
FEDERAL ESPRESSO, INC., ANNA DOBBS doing business as Federal Espresso, JOHN DOBBS doing business as Federal Espresso, DAVID J. RUSTON doing business as Federal Espresso, Defendants-Appellees.
 Docket No. 98-9430
August Term, 1999
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued: Aug. 25, 1999
Decided: Jan. 5, 2000
 
 Appeal from an order of the United States District Court for the Northern District of New York, Rosemary S. Pooler, Circuit Judge, sitting by designation, denying motion of plaintiff Federal Express for preliminary injunction against defendant coffee sellers' use of trade name Federal Espresso, see 15 U.S.C. 1114, 1125(a), and 1125(c); New York Gen. Bus. Law 360-l.
 Affirmed.
 EDWARD CONAN, Syracuse, New York (Deborah H. Karalunas, Louis Orbach, Bond, Schoeneck & King, on the brief), for Plaintiff-Appellant.
 JOSEPH J. HEATH, Syracuse, New York, for Defendants-Appellee.
 Before: WINTER, Chief Judge, KEARSE and STRAUB, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Federal Express Corporation ("Federal Express") appeals from an order of the United States District Court for the Northern District of New York, Rosemary S. Pooler, Circuit Judge, sitting by designation, denying its motion for a preliminary injunction against defendants Federal Espresso, Inc., and three individuals doing business under the name "Federal Espresso" (collectively "Federal Espresso") for, inter alia, trademark infringement in violation of 32 and 43(a) of the Lanham Act, 15 U.S.C. 1114, 1125(a) (1994), and trademark dilution in violation of New York Gen. Bus. Law 360-l (McKinney Supp. 1999) (formerly 368-d), and 43(c) of the Lanham Act, as amended by the Federal Trademark Dilution Act of 1995, 15 U.S.C. 1125(c) (Supp. III 1997). The district court denied the motion on the ground that Federal Express failed to show that in the absence of such an injunction it would likely suffer irreparable harm. Federal Express challenges this finding on appeal and contends that it presented evidence sufficient to warrant preliminary injunctive relief. For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 The facts, largely as set forth in the district court's opinion, are substantially undisputed. Federal Express, incorporated in 1972, invented the overnight shipping business. It has used the name "Federal Express" since 1973. In 1984, it also registered the mark "FedEx"; and in 1994 it introduced a new corporate logo that included both names. Federal Express currently has 140,000 employees, ships 2.9 million packages per day, and has annual revenues of more than $11 billion.
 
 
 3
 Federal Express provides service in at least 210 countries and has registrations of, or pending applications to register, the name "Federal Express" in some 175 countries. Federal Express spends $35,000 to $40,000 a month to file, prosecute, and maintain its trademarks. Various stylings of the "Federal Express" mark are registered as trademarks and service marks with respect to a variety of uses, both for those integral to Federal Express's shipping operations, such as pick-up, transportation, storage, tracing, and delivery of documents, packages, and cargo, and for those that are farther removed from Federal Express's core business, such as beach towels, beverage bottles, and clothing. Those marks that are not black-and-white use the colors orange and purple.
 
 
 4
 Defendants concede that Federal Express's mark is distinctive, famous, and entitled to protection. (See Federal Espresso brief on appeal at 15, 17, 33.)
 
 
 5
 In March 1994, defendants Anna Dobbs ("Dobbs") and David J. Ruston, her brother, formed a business called New York Espresso in Syracuse, New York, for the wholesale distribution of commercial espresso machines. In April 1994, Dobbs, her husband defendant John Dobbs, and Ruston decided to change the name of the business from New York Espresso to "Federal Espresso." Ruston stated that the name was chosen in part because it was easier to recognize than "New York Espresso." Dobbs testified that the idea of using "Federal Espresso" originated when the partners were considering opening a coffee shop in Syracuse, in a building located across the street from a federal building. She also testified that she thought "Federal Espresso" would be an easy name to remember because of its similarity to the name "Federal Express," which she knew to be a well-known, registered trademark.
 
 
 6
 Accordingly, in April 1994, the Dobbses and Ruston filed an application to do business as Federal Espresso; in July 1995, they formed the defendant corporation with that name. The coffee shop envisioned for the building across from the federal building did not materialize. However, in November 1995, Dobbs opened a coffee shop, called "Federal Espresso," at a different Syracuse location (the "Pearl Street" shop). The sign over the entrance displayed the name "FEDERAL ESPRESSO" in bright yellow capitals on a dark blue background. Dobbs stated that she chose typeface and colors that were different from the Federal Express typeface and colors in order to avoid confusion. The company fashioned a circular logo consisting of a stylized lion's head inside of three rings: an outer ring formed by repetitions of the letters "OWTU," a middle ring depicting cups poised to catch falling coffee beans, and an inner ring reading "FEDERAL ESPRESSO YOUR LOCAL ROASTER." The logo was used in various color combinations for various purposes. For example, a combination of yellow, green, navy blue, brown and white were used on a sign in the shop; silver and purple were used on coffee bags; and beige and purple were used on frequent-customer discount cards.
 
 
 7
 In 1996, defendants applied to the Patent and Trademark Office ("PTO") for registration of "Federal Espresso" as a service mark. Federal Express formally opposed the application and sent defendants a cease-and-desist letter. In April 1997, Federal Express and Federal Espresso entered into a settlement agreement before the PTO Trademark Trial and Appeal Board, in which defendants withdrew their application and agreed to cease, on or before June 1, 1997, all use of "Federal Espresso." Federal Express waived its rights to seek monetary damages from defendants unless defendants subsequently breached the agreement.
 
 
 8
 In June 1997, defendants changed the name of their store to "Ex Federal Espresso." They bought yellow letters "E" and "X" and placed them at a 45-degree angle to the left of "Federal Espresso" on signs at the Pearl Street store. Dobbs testified that defendants chose that alteration because it would be inexpensive. Defendants retained supplies bearing the name "Federal Espresso," but they handwrote "EX" on most of them before using them. Some items were used without the addition of "EX"; some store signs still read "Federal Espresso" in November 1997; and the corporation's name was not changed until December 1997.
 
 
 9
 Defendants opened a second store on Water Street in Syracuse in August 1997. They have stated that they would like eventually to open additional retail operations, including in cities other than Syracuse, such as New York City.
 
 
 10
 Having learned that defendants continued after June 1, 1997, to use the mark "Federal Espresso" and were using "Ex Federal Espresso," Federal Express commenced the present action in August 1997. It principally asserted claims of service mark infringement, trademark infringement, and unfair competition under 15 U.S.C. 1114, 1125(a) and state law, and claims of dilution of the distinctive quality of its famous mark under 15 U.S.C. 1125(c) and New York Gen. Bus. Law 360-l; and it moved for a preliminary injunction.
 
 
 11
 Following limited discovery and an evidentiary hearing, the district court denied the motion in a Memorandum Decision and Order dated September 30, 1998 ("Order"), reported at 1998 WL 690903 (N.D.N.Y. Sept. 30, 1998). The court stated that if a plaintiff establishes that it is likely to prevail on a claim of infringement or dilution, irreparable harm is to be presumed. It found that Federal Express had not produced any independent evidence of likely irreparable harm, and hence a finding of such harm hinged on its likelihood of success on those claims. The court concluded that Federal Express was not likely to succeed on either type of claim.
 
 
 12
 As to the infringement claims, the court analyzed the evidence before it in light of the eight factors set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.) ("Polaroid"), cert. denied, 368 U.S. 820 (1961), in order to determine whether there was a likelihood of consumer confusion. Those factors are:
 
 
 13
 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers.
 
 
 14
 Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 177 (2d Cir. 1993); see, e.g., Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 391 (2d Cir. 1995).
 
 
 15
 The court concluded that only the first factor, the strength of the Federal Express mark, favored Federal Express. As to the second factor, the court found that
 
 
 16
 although the words FEDERAL ESPRESSO and FEDERAL EXPRESS are somewhat similar in content and sound, those similarities are far outweighed by the dissimilarities evident in the parties' use of the marks. The words are entirely different in meaning, they are different in pronunciation, and they appear different in use. The marks appear in different typefaces and colors, and as part of distinctly different logos. In addition, defendants' use of their mark is always accompanied by other indicia of origin, such as a logo, pictures of coffee cups, or words like "coffee," that prevent any confusion as to the source of their products. Because the marks are not sufficiently similar to cause confusion, this factor favors defendants.
 
 
 17
 1998 WL 690903, at *15. As to Polaroid factors three through eight, the court found that there was little similarity between the overnight shipping business and the sale of coffee and espresso machines, no intent by Federal Express to enter the coffee business, no evidence that defendants' coffee or machines were of inferior quality, no actual confusion between products, and no apparent lack of sophistication on the part of consumers such as would cause confusion in buying, see id. at*15-18; and it found insufficient evidence that defendants chose the Federal Espresso name in bad faith, see id. at*17 ("this factor is neutral").
 
 
 18
 Balancing the Polaroid factors, the court concluded that because the only factor in Federal Express's favor was the strength of its mark, Federal Express had not demonstrated likelihood of success on any of its trademark infringement claims or its federal unfair-competition claim. See id. at*19. The court also found that Federal Express was not likely to succeed on its state-law claims of unfair competition for the same reasons and "because there is no compelling evidence to suggest that defendants acted in bad faith or with the intention of misappropriating any good will in plaintiff's FEDERAL EXPRESS mark." Id.
 
 
 19
 The court further found that Federal Express had not established a likelihood of success on its claims of dilution, assessed in light of six factors:
 
 
 20
 The court considers five factors when assessing dilution by blurring under Section 43(c) of the Lanham Act: "(1) similarity of the trademarks and trade dress; (2) similarity of the products; (3) sophistication of consumers; (4) renown of the senior mark and trade dress; and (5) renown of the junior mark and trade dress." Clinique[ Laboratories, Inc. v. DEP Corp., 945 F. Supp 547, 562 (S.D.N.Y. 1996)]. Under New York General Business Law 360-l, predatory intent is also a factor in the analysis. Cf. id. at 563 n.22.
 
 
 21
 1998 WL 690903, at*20. Of these factors, the court found that only the fourth, the fame of the Federal Express mark, favored Federal Express. With respect to the first, similarity of the trademarks, the court found, given the "inherent difference between 'Express' and 'Espresso,'" id. at*21, and "the context in which the parties use them," id. at*20, that "the marks 'FEDERAL EXPRESS' and 'FEDERAL ESPRESSO' are not 'very' or 'substantially' similar," id. at*21, and stated that this "'dissimilarity alone could defeat [plaintiff's] blurring claim,'" id. (quoting Hormel Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 506 (2d Cir. 1996) ("Hormel")). As to the second factor, similarity of products, the court found that this factor "does not favor plaintiff" because plaintiff and defendants "offer distinctly different products and services." 1998 WL 690903, at*21. As to the third factor, the court found that Federal Express's customers are "relatively sophisticated consumers" because they are "willing to pay a private shipper for fast delivery." Id. Because of this sophistication, the court found that this factor favored Federal Espresso. See id. The court found that the fifth factor too favored Federal Espresso:
 
 
 22
 FEDERAL ESPRESSO is not well-known or famous, save perhaps in Syracuse, New York. The name has no inherent distinctiveness, nor has it acquired secondary meaning. FEDERAL ESPRESSO is merely a descriptive phrase for a coffee business that aspires to "sound big." "Where the fame of the junior mark is non-existent, the likelihood of finding dilution by blurring is minimal." [Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v.] B.E. Windows [Corp.], 937 F.Supp. [204, 213 (S.D.N.Y. 1996).]
 
 
 23
 1998 WL 690903, at*21. Finally, with respect to predatory intent, the court found that
 
 
 24
 [p]laintiff produced no evidence that defendants adopted their mark with the intent of benefitting commercially from the fame of the mark "FEDERAL EXPRESS." Ms. Dobbs testified that she adopted the FEDERAL ESPRESSO mark after viewing a site near the Federal Building and because she wanted her business to "sound big." The fact that defendants did not seek the assistance of counsel prior to choosing their mark raises the possibility that they were aware of a potential infringement but continued to use the name. Ms. Dobbs testified that she was familiar with the FEDERAL EXPRESS mark. However, she stated that the partners did not think their name was a problem because they did not ship packages.
 
 
 25
 No information was submitted at the preliminary injunction hearing that would support a finding of predatory intent. Thus, this factor favors defendants.
 
 
 26
 Id. at*22.
 
 
 27
 After balancing these six factors, the district court concluded that
 
 
 28
 plaintiff has not demonstrated that it will likely succeed on its dilution claims. The absence of substantial similarity of the marks in the context of the parties' use alone is sufficient to defeat the claim. Aside from the conceded renown of plaintiff's mark, each of the remaining factors favors defendants as well.
 
 
 29
 Id.
 
 II. DISCUSSION
 
 30
 In cases involving claims of trademark infringement and dilution, as in other types of cases, a party seeking a preliminary injunction must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See, e.g., Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Home Box Office, Inc. v. Showtime/The Movie Channel Inc., 832 F.2d 1311, 1314 (2d Cir. 1987). We review the denial of a preliminary injunction for abuse of discretion. See, e.g., Carpenter Technology Corp. v. City of Bridgeport, 180 F.3d 93, 97 (2d Cir. 1999); Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998).
 
 
 31
 For the reasons that follow, we see no error in the district court's conclusion that Federal Express was not entitled to a preliminary injunction on its trademark infringement claims because it did not show a likelihood of success on those claims. Further, though resolution of the merits of the dilution claims will require fresh analysis in the district court in light of our recent decision in Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208 (2d Cir. 1999) ("Nabisco"), and although we disagree with certain aspects of the district court's findings, we see no abuse of discretion in the court's ultimate conclusion that Federal Express did not make a sufficient showing of a need for a preliminary injunction in order to prevent irreparable harm.
 
 A. Trademark Infringement
 
 32
 The Lanham Act makes it unlawful for any person, in connection with goods, services, or containers for goods, to use in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ...which ... is likely to cause confusion . . . as to the origin, sponsorship, or approval" of the goods, services, or commercial activity. 15 U.S.C. 1125(a)(1). The hallmark of infringement in violation of this section is likelihood of confusion. See, e.g., Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508-09 (2d Cir. 1997); Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996); Arrow Fastener Co. v. Stanley Works, 59 F.3d at 390; Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d at 1077; Restatement (Third) of Unfair Competition 21 comment a (1995) ("The test for infringement is whether the actor's use of a designation as a trademark ... creates a likelihood of confusion ....").
 
 
 33
 The district court correctly noted that in such a case, proof of a likelihood of confusion would create a presumption of irreparable harm, and thus a plaintiff would not need to prove such harm independently. See, e.g., Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d at 142; Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988); Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971). By the same token, however, if the plaintiff does not show likelihood of success on the merits, it cannot obtain a preliminary injunction without making an independent showing of likely irreparable harm.
 
 
 34
 As to Federal Express's claims of trademark infringement, we have no difficulty with the district court's ruling that Federal Express did not show likelihood of confusion and hence did not show that it was likely to succeed on the merits of those claims. The district court properly applied the Polaroid factors in reaching that conclusion, and we see no clear error in its findings as to those factors. Accordingly, since Federal Express did not make any independent showing of likelihood of irreparable harm, the trademark infringement claims did not warrant the granting of a preliminary injunction.
 
 
 35
 For the same reasons, we see no error in the district court's conclusion that Federal Express had not shown a likelihood of success on its claims for unfair competition.
 
 B. Dilution
 
 36
 The question of whether Federal Express made a sufficient showing to warrant an injunction on the basis of its claims of dilution requires somewhat greater discussion. Preliminarily, we note that defendants point out that they began using the Federal Espresso name in 1994, and they argue that the Federal Trademark Dilution Act of 1995 ("FTDA") should not be applied retroactively. Given the district court's denial of preliminary injunctive relief against defendants, and our affirmance, we need not reach that issue on this appeal, and we leave consideration of retroactivity to the district court in the first instance.
 
 
 37
 Both federal and state laws protect the owner of a famous and distinctive trademark from "dilution" of its mark. The FTDA provides, in pertinent part, that
 
 
 38
 [t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.
 
 
 39
 15 U.S.C. 1125(c)(1). The FTDA defines "dilution" to
 
 
 40
 mean[] the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of--
 
 
 41
 (1) competition between the owner of the famous mark and other parties, or
 
 
 42
 (2) likelihood of confusion, mistake, or deception.
 
 
 43
 15 U.S.C. 1127 (emphasis added). New York law similarly provides that
 
 
 44
 [l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.
 
 
 45
 N.Y. Gen. Bus. Law 360-l (McKinney Supp. 1999) (emphasis added) (formerly 368-d).
 
 
 46
 The type of dilution pertinent to the present case is "blurring," a process that may occur "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Hormel, 73 F.3d at 506 (quoting Deere & Co. v. MTD Products, Inc., 41 F.3d 39, 43 (2d Cir. 1994) (emphases in original)). "[I]njury to the mark's selling power need not involve any confusion as to source or sponsorship....The legislative history of 368-d underscores this understanding by giving examples of hypothetical violations: 'DuPont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth.'" Hormel, 73 F.3d at 506 (quoting 1954 N.Y. Legis. Ann. 49-50).
 
 
 47
 In sum, in order to prevail on a dilution claim a plaintiff is not required to prove likelihood of confusion. Trademark dilution statutes are designed to
 
 
 48
 cover those situations where the public knows that the defendant is not connected to or sponsored by the plaintiff, but the ability of the plaintiff's mark to serve as a unique identifier of the plaintiff's goods or services is weakened because the relevant public now also associates that designation with a new and different source.... Thus, where the classic likelihood of confusion test leaves off, the dilution theory begins.
 
 
 49
 Sports Authority, Inc. v. Prime Hospitality, Inc., 89 F.3d at 96566 (discussing New York law) (internal quotation marks and brackets omitted) (emphasis added); see Nabisco, 191 F.3d at 219 ("Consumer confusion--the nub of an action for infringement--is, of course, unnecessary to show the actionable dilution of a famous mark." (discussing FTDA and New York law)).
 
 
 50
 Nabisco, decided subsequent to the denial of the preliminary injunction in this case, involved a junior user's request for a declaratory judgment that its new "goldfish-shaped, orange-colored, cheddar-flavored, bite-sized crackers," 191 F.3d at 219, would not dilute the mark of the defendant Pepperidge Farm, which continuously for several decades had marketed a cracker of "essentially the same color, shape, size, and taste," id. at 218. Pepperidge Farm counterclaimed for, inter alia, dilution. The district judge found that Pepperidge Farm was likely to succeed on its dilution claims, and she granted a preliminary injunction requiring Nabisco to recall and cease distributing its goldfish crackers. We affirmed, although our analysis differed from that of the district court.
 
 
 51
 The district court had found likelihood of success by Pepperidge Farm on its claims for dilution, under both federal and state law, by applying the six-factor test for state-law dilution claims advocated by the concurring opinion in Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026 (2d Cir. 1989) ("Mead Data"), see id. at 1032-40 (concurring opinion of Sweet, D.J.). In reviewing the preliminary injunction at issue in Nabisco, we noted that the test proposed by the Mead Data concurring opinion did not encompass all of the factors that might bear on the issue of dilution, see Nabisco, 191 F.3d at 227-28, and has not automatically been applied by this Court even with respect to claims under state law, see id. at 227 n.8, and we stated that "[i]t is not yet entirely clear how courts should determine whether a junior use causes a senior mark to suffer dilution," id. at 217. We concluded that it is early in the collective judicial experience with the FTDA, enacted in 1995, to attempt to fashion a definitive list of factors to be considered and that, at least initially, claims of dilution under the FTDA should be assessed on a case-by-case basis. See id. at 227. In Nabisco, we upheld the preliminary injunction after analyzing some 10 factors:
 
 
 52
 (a) The distinctiveness of the senior mark--both because it is not entitled to protection at all if it is not distinctive, and because the "degree of distinctiveness of the senior mark has a considerable bearing on the question whether a junior use will have a diluting effect." Id. at 217 (emphasis in original).
 
 
 53
 (b) The similarity of the marks--"an obvious factor": "The marks must be of sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior[ mark, thereby] lessen[ing] the distinctiveness of the senior mark.... ('We hold ... that the marks must be "very" or "substantially" similar and that, absent such similarity, there can be no viable claim of dilution.')." Id. at 218 (quoting Mead Data, 875 F.2d at 1029).
 
 
 54
 (c) The proximity of the products and likelihood of bridging the gap--a less important factor than in infringement suits, because "[t]he legislative history of the antidilution statutes shows that the legislatures were largely concerned with junior uses of famous marks on products unrelated to the senior area of commerceas in the hypothetical cases of Buick aspirin, Schlitz varnish, or Kodak pianos. See H. Rep. 104374, at 3, reprinted in 1995 U.S.C.C.A.N. 1029, 1030; Mead Data, 875 F.2d at 1031." Nabisco, 191 F.3d at 218.
 
 
 55
 (d) The "close interdependent relationship among the[ three preceding] factors": "The weaker any of the three factors may be, the stronger the others must be to make a case of dilution." Id. at 219.
 
 
 56
 (e) "[T]he extent of overlap among consumers of the senior user's products and the junior user's products." Id. at 220.
 
 
 57
 (f) The sophistication of the consumers: "Courts examining questions of infringement, as well as dilution, have looked at the sophistication of consumers as a relevant factor. See Mead Data, 875 F.2d at 103132; Sally Gee, 699 F.2d at 626; Polaroid, 287 F.2d at 495." Nabisco, 191 F.3d at 220.
 
 
 58
 (g) Whether there is actual confusion: While "neither actual confusion nor likelihood of confusion is necessary to sustain an action for dilution, it does not follow that actual confusion cannot be highly probative of dilution. Confusion lessens distinction. When consumers confuse the junior mark with the senior, blurring has occurred." Id. at 221.
 
 
 59
 (h) Whether the senior user's mark is in fact descriptive of the junior use: "The stronger the adjectival association between the junior use and the junior area of commerce, the less likelihood there is that the junior's use will dilute the strength of the senior's mark." Id.
 
 
 60
 (i) Whether the senior user acted with reasonable promptness in seeking to protect its mark from the alleged dilution by the junior user, or whether instead there has been a delay such that an injunction will harm the junior user, e.g., by causing it to lose goodwill built up in the interim. See id. at 222.
 
 
 61
 (j) Whether the senior user has been lax in the past in taking steps to protect its mark against dilution by others. See id.
 
 
 62
 We concluded, after assessing these factors, that the issuance of a preliminary injunction against Nabisco was not an abuse of discretion:
 
 
 63
 Considering the reasonable distinctiveness of the Goldfish mark, the very close proximity of the products, the degree of similarity between the two goldfish crackers, the low level of sophistication of many consumers, the occurrence of adjudication at the start of the junior use (and consequent absence of injury to the junior user's accumulated goodwill in its mark), we conclude that Pepperidge Farm has demonstrated a high likelihood of success in proving that Nabisco's commercial use of its goldfish shape will dilute the distinctiveness of Pepperidge Farm's nearly identical famous senior mark. We conclude the district court committed no error in granting a preliminary injunction.
 
 
 64
 Id. at 222.
 
 
 65
 In the present case, after analyzing the record in light of the pertinent factors, we are less inclined than the district court toward the view that Federal Express is not likely to succeed on the merits of its dilution claims--although our view does not lead us to conclude that it was an abuse of discretion to deny a preliminary injunction. Several of the above factors seem to suggest that Federal Express may win on the merits. To begin with, the fame and distinctiveness of its mark is not in dispute. Defendants concede that the mark is entitled to protection. The district court found that it is "strong," that it had "acquired secondary meaning," and that it "is entitled to broad protection." 1998 WL 690903, at*10.
 
 
 66
 Federal Express regularly spends large sums of money, $35,000$40,000 per month, to protect its marks against infringement and dilution; and in the present case it moved promptly against defendants both when it learned of their attempt to register the name "Federal Espresso" with the PTO and when it learned of their conduct following the date by which they had agreed to cease using the "Federal Espresso" name.
 
 
 67
 Further, although the district court found that "Federal Express" and "Federal Espresso" are not substantially similar names, the factfinder at trial may well find that the marks are of "sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior," Nabisco, 191 F.3d at 218, especially in light of the testimony of Dobbs herself that she chose the name Federal Espresso, in part, precisely because it would call to mind Federal Express. We note also that the district court stated that there was no "compelling" evidence of defendants' bad faith, 1998 WL 690903, at*19; "no evidence that defendants adopted their mark with the intent of benefitting commercially from the fame of the mark 'FEDERAL EXPRESS,'" id. at *22; and "no information" in the record "that would support a finding of predatory intent," id. While the court itself was unpersuaded that the marks were similar or that there was bad faith or predatory or freeloading intent--as was the court's prerogative as the preliminary factfinder in connection with the preliminary injunction motion--these facts need be proven only by a preponderance of the evidence, not by compelling evidence; and we reject any suggestion that the evidence advanced thus far, including Dobbs's testimony that she chose "Federal Espresso" in part because it would call to mind Federal Express, would not be sufficient to allow the ultimate factfinder to find in favor of Federal Express on those issues.
 
 
 68
 Nonetheless, the fact that Federal Express may well ultimately prevail on its dilution claim, and therefore be entitled to a permanent injunction, does not mean that it was presumptively entitled to a preliminary injunction. Though the legislatures have concluded that the gradual erosion of a famous or distinctive mark is to be prevented, the district court, before exercising its extraordinary equity powers to grant a preliminary injunction, should consider the likely pace of such an erosion pending adjudication of the merits. Some likely successful dilution claims will warrant such preliminary relief, while others will not. In Nabisco, for example, the parties' products--snack crackers--were virtually identical in size, shape, color, and taste, making consumer confusion likely; further, the junior user, Nabisco, was a giant company with nationwide distribution chains, ready outlets for its products in competition with Pepperidge Farm, and proven marketing expertise. In the absence of a preliminary injunction, the rate of dilution was likely to be rapid. Here, in contrast, the principal products--coffee and overnight delivery service--are dissimilar; there would seem to be little likelihood of confusion; and while Federal Express is a vast organization, operating in 210 countries, employing 140,000 persons, and grossing more than $11 billion annually, defendants are three individuals with two stores in Syracuse. Although Federal Express need not prove actual or likely confusion in order to prevail on the merits of a dilution claim, the absence of those factors is relevant to the court's determination of whether an injunction is needed before the merits are decided. The court was entitled to conclude, given these facts and the tiny extent of the overlap among customers of Federal Express and Federal Espresso, that dilution was not imminent and that a preliminary injunction was not needed.
 
 
 69
 We also note that, although there apparently was no delay by Federal Express in bringing the present action, this Court may take into account whether or not a plaintiff has been assiduous in pursuing the litigation once started. At the oral argument of this appeal, which took place nearly a year after the district court denied the preliminary injunction motion, Federal Express informed us that nothing had been done in the district court to speed the proceedings toward an ultimate resolution of the merits. The seeming lack of urgency on the part of a plaintiff who has been denied interim relief tends to confirm the view that irreparable harm was not imminent.
 
 
 70
 The record does not indicate whether defendants' avowed aspirations to open additional local stores or to expand beyond Syracuse are likely to be realized; and we do not suggest that if growth occurs Federal Express will not be justified in renewing its request for preliminary injunctive relief. On the present record, however, we conclude that the denial of immediate relief was not an abuse of discretion.
 
 CONCLUSION
 
 71
 Having considered all of Federal Express's contentions on this appeal and having found in them no merit except as indicated above, we see no basis for reversal. The order of the district court denying a preliminary injunction is affirmed.