ROBOT WARS LLC, Plaintiff,

v.

Edward "Trey" ROSKI, III, Edward Roski, Jr., and Battlebots, Inc., Defendants.

No. 99 Civ. 2953(JSR).

United States District Court, S.D. New York.

June 15, 1999.

Fran M. Jacobs, Karen Frieman, New York City, for plaintiff.

James Brandt, James Samuel Blank, New York City, for defendants Edward "Trey" Roski, III, Battlebots.

Robert Jossen, for defendant Edward Roski, Jr.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff Robot Wars LLC promotes and produces robotic combat events—"sporting" competitions in which mechanical gladiators designed and operated by independent "robot builders" square off in a bloodless variation of cockfighting. Formed in 1994 as a joint venture between non-parties Marc Thorpe and Profile Holdings, Inc. (f/k/a Profile Records, Inc.), Robot Wars held public events in August 1995 and August 1996, and has announced that its third event, "Robot Wars '99," will take place in San Francisco, California from August 20, 1999 through August 22, 1999. The ultimate objective of holding these events, according to Robot Wars' principal Steven Plotnicki (Chairman of Profile Holdings), is to interest television and merchandising companies in marketing the sport to the general public. *See* Aff. of Steven Plotnicki in Supp. of Mot. ("Plotnicki Aff.") at ¶ 6.

Defendant BattleBots, Inc., incorporated in 1999 and alleged by plaintiff to be under the "control" of defendants Edward "Trey" Roski, III and Edward Roski, Jr., *see* Complaint at ¶¶ 10–12, is a competing producer of robotic combat competitions. According to Robot Wars, BattleBots is trying to beat it to the punch, so to speak, by scheduling its first event for August 14 and 15, 1999 in Long Beach, California. *See* Plotnicki Aff. at ¶ 80.

On April 23, 1999, Robot Wars filed suit in this Court accusing defendants of (1) unfair competition under N.Y. Gen. Bus. Law § 360-1, (2) common law unfair competition, (3) common law tortious interference with contract, (4) common law tortious interference with economic advantage, and (5) trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Shortly thereafter, plaintiff moved for a preliminary injunction restraining defendants from proceeding with their planned event in August. Having now considered the arguments raised by counsel in their respective briefs and at the oral argument held on June 7, 1999, *see* transcript, the Court hereby denies plaintiff's motion for a preliminary injunction, for the following reasons.

It is settled law in this Circuit that a party seeking a preliminary injunction must demonstrate "irreparable harm and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balancing of the hardships tipping decidedly in favor of the moving party." *Velazquez v. Legal Services Corp.*, 164 F.3d 757, 763 (2d Cir.1999) (citing *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir.1997)). While it appears doubtful that plaintiff has satisfied either of the numbered alternatives, the Court need not reach these issues because Robot Wars has failed to demonstrate that it will suffer irreparable harm, the indispensable prerequisite to any preliminary injunction.

To show irreparable harm, the moving party is required to demonstrate that in the absence of the requested injunction it will suffer an injury that is "imminent or certain, not merely speculative," and for which monetary damages is not a complete remedy. *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995). Here, plaintiff claims that BattleBots and its codefendants, having stolen plaintiff's concepts, copied its trade dress, and disrupted its operations, are seeking to realize further fruits of these wrongs by staging a similar show one week before plaintiff's. This will cause irreparable harm, according to plaintiff, because:

If defendants are not enjoined, they will be able to leapfrog over Robot Wars

and, using the goodwill they took from Robot Wars, they will be the first to get a robotic combat program on television and to line up the ancillary licenses that flow from a television program. Once this happens, Robot Wars will be forever shut out of the marketplace which it developed and which it was just about to enter two years ago when its hands were tied by defendants' scheme.

Pl.'s Mem. in Supp. of Mot. at 20.

On inspection, however, the harm plaintiff here alleges is entirely speculative and, if it exists at all, is fully compensable by monetary damages. In effect, plaintiff asks the Court to accept, on no better basis than the conclusory assertions of Plotnicki, see Reply Decl. of Steven Plotnicki at ¶¶ 38–42, a four-step line of surmise: (1) that absent competition from BattleBots, Robot Wars would in fact obtain television and merchandising contracts as a result of Robot Wars '99; (2) but that, if BattleBots is not enjoined, the competition from BattleBots' event will so significantly diminish the Robot Wars event that Robot Wars will not secure these contracts; (3) that, instead, BattleBots, on the strength of its August event, will itself secure the hypothesized television and marketing contracts before the instant litigation can be resolved;[1] and (4) that once BattleBots has secured the television contract, there will be no room in the American television market for a competing robotic combat program. Nothing in plaintiff's conclusory submissions remotely warrants the Court in concluding that any of these suppositions (let alone all of them) is anything more than a guess—and an unlikely one at that.

Moreover, even if the harm foretold by Robot Wars were likely to occur, it could be remedied by ordinary monetary damages. While plaintiff speculates that there is room for only one robotic combat program on American television and that, by holding its copy-cat show first, BattleBots will obtain this unique opportunity for itself before the instant litigation is resolved, the entry of a permanent injunction at the conclusion of this litigation would remove BattleBots from the competitive field and free Robot Wars to pursue its own broadcast opportunity unimpeded.[2] Meanwhile, any damages suffered by Robot Wars during the period of the litigation itself could be remedied monetarily.

■ It is true that irreparable harm will often be "presumed when the use of a trademark or copyright creates a likelihood of confusion in the consumer's mind as to the ownership or sponsorship of a product." Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F.Supp. 153, 164 (S.D.N.Y.1995) (citing Church of Scientology Intern. v. Elmira Mission, 794 F.2d 38 (2d Cir.1986); Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985); Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp., 25 F.3d 119 (2d Cir.1994)). Thus, to the extent plaintiff asserts claims of trade dress infringement, it could presumably satisfy the irreparable harm element of the preliminary injunction test by demonstrating a probability of success on the merits with respect to the likelihood of confusion aspect of those claims. But even here plaintiff fails.

Plaintiff's trade dress claim is that certain characteristics of its upcoming show—particularly the staging in August before a

---

1. This Court ordinarily brings its cases to trial within six to nine months after the filing of the Complaint.

2. To the extent plaintiff suggests that the next several months represent a fixed window of time after which the opportunity to obtain television contracts for robotic combat will irrevocably vanish, see transcript at 88–89, such an assertion finds no basis in any competent evidence currently before this Court.

Moreover, one wonders why plaintiff believes that the licensees who, according to plaintiff, previously refused to enter agreements with Robot Wars because of the legal uncertainty created by ongoing litigation between Profile and Thorpe, see Plotnicki Aff. at ¶ 36, would now be willing to enter into agreements with BattleBots despite the legal uncertainty created by the instant litigation.

live California audience of robotic combat that adheres to certain rules governing the competition—constitute protectable trade dress, *see Toy Manufacturers of Am. v. Helmsley–Spear, Inc.*, 960 F.Supp. 673 (S.D.N.Y.1997), and that defendants have infringed this trade dress by incorporating many of the same elements into their BattleBots event. Even assuming *arguendo* that this states a claim for trade dress infringement, the Court finds that plaintiff has not demonstrated any likelihood of confusion between the trade dress of plaintiff's show and that of defendants' show.

██ In the Second Circuit, likelihood of confusion is analyzed by reference to the so called *"Polaroid"* factors, *see Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961), which include: "1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will 'bridge the gap' and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers." *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir.1993). In this analysis, "[n]o single Polaroid factor is determinative. Rather each must be considered in the context of all of the other factors, and from a balance of these determinations, one is able to reach the ultimate conclusion, whether there is likelihood of confusion between the two parties' products." *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir.1983).

██ In this case, only two of the *"Polaroid"* factors—similarity of the trade dress and competitive proximity of the products—suggest a likelihood of confusion. By contrast, plaintiff's utter failure to establish five of the remaining six factors weighs heavily against such a finding.[3]

First, as to the strength of plaintiff's mark, plaintiff has not proffered any material evidence whatever that plaintiff's trade dress is a strong indicator of the source of its product but relies instead on wholly conclusory assertions that are entitled to no weight, *see, e.g.*, Pl.'s Mem. in Supp. at 12.

Second, as to actual confusion, plaintiff's only purported proof of actual confusion is a brief Internet newsgroup posting in which a robot builder describes BattleBots as a "renegade RobotWars." *See* Plotnicki Reply Decl., Ex. K. Far from demonstrating confusion, however, it is clear from the face of the posting that the writer is fully aware that BattleBots, though perhaps attempting to imitate Robot Wars, is a distinct entity. Indeed, as plaintiff itself elsewhere concedes, most of the other evidence before the Court strongly suggests, not that the robot builders are confused about the relationship between BattleBots and Robot Wars, but rather the exact opposite—that defendants have successfully publicized the lack of any relationship between the two competitors. *See* Pl.'s Mem. in Supp. at 14 ("[D]efendants have played up the difference between themselves and Robot Wars in order to turn the insiders—the robot makers—against Robot Wars.").

Third, as to good faith, while plaintiff asserts that defendants have acted with deliberate and malicious intent toward plaintiff in imitating certain features of Robot Wars, *see* Pl.'s Mem. in Supp. at 13, such an accusation is irrelevant to a *"Polaroid"* analysis of good faith, which is concerned with whether or not there was an intent to deceive consumers (trademark law being, at bottom, a consumer protection law). *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998) ("The intent to compete by imitating the successful features of another's prod-

---

**3.** The other factor—the likelihood that plaintiff will bridge the gap between its own market and defendants' market—is irrelevant

where, as here, the parties are already competing in the same market.

uct is vastly different from the intent to deceive purchasers as to the source of the product."). As already mentioned, the bulk of the evidence suggests that, rather than attempting to confuse consumers into believing that BattleBots is affiliated with Robot Wars, defendants have affirmatively attempted to portray themselves as a distinctly superior alternative to Robot Wars.

Fourth, as to the quality of defendants' product, plaintiff has, once again, offered nothing more than rank speculation in support of its assertion that defendants are likely to "'tarnish' the well-developed trade dress of Robot Wars by staging a confusingly similar, but inferior, event." *See* Pl.'s Mem. in Supp. at 14.

Finally, as to the sophistication *vel non* of the relevant consumers, plaintiff does not assert a lack of sophistication among the robot builders, the only group currently "consuming" either party's product. While plaintiff does assert that potential licensees and the general television viewing public are less sophisticated than the robot builders about this particular product, television producers and other potential licensees are unlikely to invest millions of dollars in a novel venture of this sort without careful study. Indeed, they "are assumed to be more sophisticated buyers and thus less prone to confusion" than the general public. *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir.1993). Finally, as to the general public, assuming *arguendo* that it is even aware that robotic combat exists, it is a complete irrelevancy to the grounds on which plaintiff here seeks injunctive relief.

Based on the foregoing application of the *Polaroid* factors, the Court concludes that plaintiff has not demonstrated probable success with respect to its burden of showing a likelihood of consumer confusion. Since, therefore, plaintiff has neither demonstrated specific irreparable harm that will befall it if an injunction is not entered nor raised a presumption of irreparable harm resulting from infringement

of its trade dress, plaintiff's motion for a preliminary injunction must be denied.

SO ORDERED.