**PROFESSIONAL SOUND SERVICES, INC., Plaintiff,**

v.

**Roland J. GUZZI et al., Defendants.**

**No. 02 CIV. 8428(DC).**

United States District Court, S.D. New York.

Dec. 27, 2004.

See also 2003 WL 22097500.

Stephen E. Feldman, P.C. by Robert H. Morse, Esq., New York City, for Plaintiff.

Meister Seelig & Fein LLP by Christopher J. Lutzo, Esq., Howard S. Koh, Esq., New York City, for Defendants.

### *OPINION*

CHIN, District Judge.

In this case, plaintiff Professional Sound Services, Inc. ("PSS") alleges product disparagement and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and makes various state law claims as well. Defendants move for

---

1. Where Defs.' 56.1 Statement is cited, plaintiff is deemed to have agreed to or conceded

summary judgment dismissing all claims. For the reasons that follow, the motion is granted as to the two Lanham Act claims, and the Court declines to exercise subject matter jurisdiction over the remaining state law claims. The second amended complaint is dismissed.

### *BACKGROUND*

#### A. *The Facts*

Construed in the light most favorable to plaintiff, the non-moving party, the facts are as follows:

#### 1. *The Parties*

PSS is a New York corporation in the business of sales, rental, and repair of professional on-location sound recording equipment. (Second Am. Comp. ¶ 13; Topham Dep. at 11). Richard Topham is the president of PSS. (Topham Dep. at 10). Defendant Gotham Sound and Communications, Inc. ("Gotham") is a New York corporation also involved in the sales and rental of professional on-location sound recording equipment, in the same market as PSS. (Second Am. Comp. ¶ 15; Schneider Dep. at 3). Defendants Roland J. Guzzi and Peter Schneider are shareholders of Gotham. (Defs.' 56.1 Statement ¶ 8).[1] Guzzi is a former employee of PSS and is Topham's cousin. (Defs.' 56.1 Statement ¶¶ 11, 12).

#### 2. *The Disparaging Comment*

Guzzi left PSS on January 11, 2002. (Guzzi Dep. at 9–10). Sometime thereafter, Guzzi initiated contact with at least one of its customers, making the following statement: "Rich lies to his customers about the prices he gets when he resells their equipment on consignment, for which

---

the facts alleged, unless otherwise indicated.

by agreement he is only supposed to take a 20% commission. He actually resells their equipment at a much higher price than he tells these customers, and then pockets the difference." (hereinafter "disparaging statement"). (Mohan Decl. ¶ 5). PSS alleges that Guzzi made the disparaging statement to "virtually all" of its customers. (Second Am. Compl. ¶ 50).[2] PSS makes this allegation with no evidentiary support; as discussed below, the only evidence is the affidavit of one customer. Guzzi has denied ever making the statement, but for purposes of this motion, I assume he did make the statement to at least one customer.

### 3. Plaintiff's "Mark"

PSS alleges that it uses as its trademark the capital letter "S" to identify itself as the source of its products. (Second Am. Compl. ¶ 104). PSS states that it "always" places an "S" on invoices, documents accompanying shipments, and the outsides of packages it sells. (Topham Decl. ¶ 6). PSS would "place[ ] it in a leading position in front of a few letters that were closely related to the manufacturer's name," followed by a catalog number. (Id. ¶ 5). As an example, PSS states that a product manufactured by Lectrosonics, with catalog number 0211, is resold by PSS with the code "SLEC0211." (Id.). PSS does not allege, nor does the record reflect, that it employed any unique design or stylized appearance of the letter "S." Rather, the letter "S" was either typed in the same basic font as the rest of the invoice, or was handwritten by whichever employee wrote up an order form. (See Defs.' Ex. P). PSS has not registered this trademark.

(Defs.' 56.1 Statement ¶ 47; Topham Dep. at 153).

### 4. Defendants' Use of the Letter "S"

Since its inception in June, 2002, Gotham has used the letter "S" in inventory codes in a similar manner as PSS. (Guzzi Decl. ¶ 16; Defs.' Ex. I; www.gothamsound.com (last visited Dec. 14, 2004)). Gotham's website lists individual items by the name of the manufacturer, with the inventory code below, in smaller, bold font. (Id.).

### B. Procedural History

PSS filed its complaint on October 22, 2002, and a first amended complaint on March 3, 2003. Defendants moved to dismiss the first amended complaint, on the basis that the sole federal claim alleged at the time, product disparagement under the Lanham Act, failed to state a claim upon which relief can be granted. The Court granted defendants' motion in part and denied it in part. *Prof. Sound Services, Inc. v. Guzzi*, No. 02 Civ. 8428(DC), 2003 WL 22097500 (S.D.N.Y. Sept. 10, 2003). Plaintiff's motion to file a second amended complaint, adding the claim of false designation of origin under the Lanham Act, was granted on December 10, 2003.

The parties engaged in discovery and the instant motion for summary judgment followed.

### DISCUSSION

First, I set out the legal standard for summary judgment. Next, I discuss separately PSS's two claims under the Lanham Act, for product disparagement and false

---

**2.** Plaintiff's complaint also alleges Guzzi made three additional disparaging comments. (*See* Second Am. Compl. ¶¶ 41, 48). Per this Court's Memorandum Decision dated September 10, 2003, plaintiff's Lanham Act claims based on these three comments were dismissed, as I found them to be statements of opinion, not fact. *Professional Sound Services, Inc. v. Guzzi*, 02 Civ. 8428(DC), 2003 WL 22097500 (S.D.N.Y. Sept. 10, 2003).

designation of origin. Finally, I briefly address PSS's state law claims.

## A. *Summary Judgment Standard*

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *accord Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991).

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. 1348. There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. To that end, any "[a]ffidavits submitted in support of or in opposition to a summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir.2004) (quoting Fed.R.Civ.P. 56(e)). The requirement set forth in Rule 56 that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit "also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Id.* at 219; *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit).

## B. *Defamation and Disparagement under the Lanham Act*

### 1. *Applicable Law*

Plaintiff's first cause of action alleges defamation and disparagement in violation of section 43(a)(1)(B) of the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(B). The Lanham Act provides in pertinent part that:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, service, or commercial activities, shall be liable in a civil action....

15 U.S.C. § 1125(a).

Hence, in a product disparagement case under the Lanham Act, a plaintiff must show (1) the use of a false or misleading statement of fact (2) in commerce (3) for commercial advertising or promotion (4) resulting in damages. *Ran-*

*da Corp. v. Mulberry Thai Silk, Inc.*, No. 00 Civ. 4061(LAP), 2000 WL 1741680, at *2 (S.D.N.Y. Nov. 27, 2000). Subjective claims or opinions are not actionable because they are not statements of fact that can be proven true or false. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir.1995) ("statements of opinion are generally not the basis for Lanham Act liability"); *Randa Corp.*, 2000 WL 1741680, at *2; *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F.Supp.2d 296, 300–01 (S.D.N.Y.1998); *Licata & Co. v. Goldberg*, 812 F.Supp. 403, 408 (S.D.N.Y.1993).

■ To constitute commercial advertising or promotion, a statement must be (1) commercial speech (2) made by a defendant who is a competitor of the plaintiff (3) to influence consumers to buy defendant's goods or services and (4) is disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion. *Gordon & Breach Sci. Publishers S.A., STBS v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1536 (S.D.N.Y.1994). The level of dissemination required varies depending on the industry involved. *Fashion Boutique of Short Hills v. Fendi USA*, 942 F.Supp. 209 (S.D.N.Y.1996).

### 2. *Application*

■ PSS claims Guzzi intentionally made the disparaging statement "for the sole purpose of defamation and disparaging [p]laintiff so as to misappropriate [p]laintiff's business." (Pl.'s Mem. at 4). Defendants argue that summary judgment should be granted in their favor because plaintiff cannot show that the statement was used in advertising and promotion, an element of the Lanham Act claim. (Defs.' Mem. at 7). Because PSS as a matter of law has failed to show that the comment was used in advertising and promotion, the

motion for summary judgment is granted as to the Lanham Act claim for product disparagement.

Guzzi denies making the disparaging statement. (Guzzi Decl. ¶ 15). Even assuming *arguendo* Guzzi did make the statement, PSS has failed as a matter of law to prove that facts exist that could support a finding that the statement was made in advertising and promotion. In its Memorandum of Law, PSS claims that "[p]laintiff, at this time, can prove that the defamatory statement was disseminated to at least four out of [p]laintiff's 36 customers." (Pl.'s Mem. at 9). In support of this assertion, PSS merely cites its second amended complaint. (*Id.*). PSS insists that it "is still investigating the exact number of customers who heard the [disparaging] [s]tatement. Since this investigation is still pending, a question of material fact is raised." (*Id.*).

Plaintiff misses the point. As the nonmoving party, PSS is required under Rule 56 to show there is a genuine issue for trial, by putting forth admissible evidence that could support a jury verdict in its favor. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Merely asserting that PSS will prove at trial more customers heard the statement is insufficient to create a genuine issue for trial. PSS has had nearly two years to obtain this evidence; its failure to do so is telling.

Although not cited in its Memorandum of Law on this point, PSS has submitted one affidavit of a customer who testifies to having heard the disparaging comment. (*See* Mohan Decl. ¶ 5). Nevertheless, the statement of one customer is insufficient as a matter of law to establish that the comment was made in advertising or promotion.[3]

---

**3.** Both parties misinterpret this Court's Memorandum Decision on defendants' motion to

A statement made in advertising or promotion is one made with the purpose of disseminating information to the public. Thus,

> the touchstone of whether a defendant's actions may be considered "commercial advertising or promotion" under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action.

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). Dissemination of a statement to one customer out of 36 [4] simply does not meet this standard. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F.Supp. 209, 216 (S.D.N.Y.1996) ("[m]ost of the courts that have addressed this issue have held that dissemination to a single consumer is not sufficient"), *citing Goldsmith v. Polygram Diversified Ventures, Inc.*, No. 94 Civ. 8888(DLC), 1995 WL 614560, at *7–8 (S.D.N.Y. Oct. 19, 1995); *Garland Co. v. Ecology Roof Sys. Corp.*, 895 F.Supp. 274, 279 (D.Kan.1995); *American Needle & Novelty, Inc. v. Drew Pearson Mktg.*, 820 F.Supp. 1072, 1078 (N.D.Ill.1993).

Plaintiff points to cases in which courts have found sufficient statements made to a small number of customers; these cases are easily distinguished as they involved a significantly larger percentage of affected customers. *See, e.g., National Artists Mgmt. v. Weaving*, 769 F.Supp. 1224 (S.D.N.Y.1991) (ten out of thirty customers); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) (one out of three customers). In this case, the potential customer base ranges from 36 to more than one hundred people. Evidence of one customer having heard the disparaging statement certainly does not suggest "an organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F.3d at 57. Therefore, plaintiff fails to support an essential element of its Lanham Act claim for product disparagement, and defendants' motion for summary judgment on this claim is granted.

### C.  *False Designation of Origin*

#### a.  *Applicable Law*

PSS's eighth cause of action alleges a violation of section 43(a)(1)(A) of the Lanham Act, which prohibits false designation of the origin of goods in interstate commerce. 15 U.S.C. § 1125(a)(1)(B). Under the Lanham Act:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any

---

dismiss as requiring plaintiff on summary judgment to prove that "virtually all" of its customers heard the disparaging statement. (*See* Defs.' Mem. at 7; Pl.'s Mem. at 8). In the context of the motion to dismiss, I found that if plaintiff proved the allegations in its complaint that "virtually all" its customers heard the disparaging comment, then it might be able to prove the statement constituted advertising or promotion, *i.e.*, these allegations were sufficient to defeat a motion to dismiss. *Professional Sound Services, Inc. v. Guzzi*, 02 Civ. 8428(DC), 2003 WL 22097500,

at *3 (S.D.N.Y. Sept. 10, 2003). In the summary judgment context, I apply the law regarding Lanham Act disparagement to the evidence plaintiff now has produced in support of its claim.

4. Topham testified in his deposition that PSS has approximately more than one hundred customers. (Topham Dep. at 120–21). In its Memorandum, plaintiff alleges it has a total of 36 customers. (Pl.'s Mem. at 9.).

word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). "The gist of the action under this section is a use of the mark or tradename in interstate commerce which is likely to cause confusion or to deceive purchasers as to the source of origin of the goods." *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1294 (S.D.N.Y.1972).

■ It is not required that a mark be registered to state a claim under the Lanham Act. *Id.* at 1294. "A claim for relief arises if the . . . [party] affixes to the goods a false designation of origin or any false description or representation." *Id.* To succeed on a false designation claim under § 1125(a), plaintiff must demonstrate (1) it holds a valid trademark entitled to protection and (2) there is a "likelihood of confusion." *Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996). Likelihood of confusion requires that "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Kraft General Foods, Inc. v. Allied Old English, Inc.*, 831 F.Supp. 123, 127–28 (S.D.N.Y.1993) (quotation omitted).

### b. *Application*

PSS alleges that defendants have violated the Lanham Act, falsely designating the origin of their products by using PSS's purported trademark—the letter "S"—on defendants' products. Defendants allege that the letter "S," without more, cannot be a trademark, or in the alternative, that no likelihood of consumer confusion exists. Defendants' motion for summary judgment as to the Lanham Act claim for false designation of origin is granted, for no reasonable trier of fact could find, on the record before the Court, that a valid trademark entitled to protection exists. Alternatively, no reasonable trier of fact could find that there exists a likelihood of consumer confusion.

### i. *Is the Trademark Valid and Entitled to Protection?*

■ As a threshold matter, plaintiff must show that it has a valid trademark entitled to trademark protection. *Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996). The statutory definition of a trademark is broad, including "any word, name, symbol, or device or any combination thereof used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of those goods, even if that source is unknown." 15 U.S.C. § 1127. For a mark to be considered a valid trademark, entitled to protection, the trademark must be either validly registered or a qualifying unregistered trademark. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). "[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Id.* at 767, 112 S.Ct. 2753. A mark may qualify for registration if it is "capable of distinguishing the applicant's

goods from those of others." *Id.,citing* 15 U.S.C. § 1052.

▆▆▆ A single letter can be a valid trademark entitled to protection. 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition 7:11 (4th ed.2004), *citing Singer Mfg. Co. v. Singer Upholstering & Sewing Co.*, 130 F.Supp. 205 (D.Pa.1955) (single letter "S"); *Michelin Tire Corp. v. General Tire & Rubber Co.*, 202 USPQ (BNA) 294 (Trademark Tr. & App. Bd.1979) (single letter "X"); *Quality Semiconductor, Inc. v. QLogic Corp.*, 1994 WL 409483, 31 U.S.P.Q.2d 1627 (N.D.Cal.1994) (single letter "Q"). Here, plaintiff has not registered its single letter trademark. Therefore, plaintiff is required to show that its use of a single letter is capable of distinguishing its goods from those of others, *i.e.*, its use of the letter "S" is distinctive. Plaintiff fails to do so.

On the issue of whether the mark is valid and entitled to protection, PSS argues only that its mark is distinctive because it in fact distinguishes its products. I address this argument first. Courts determine if a mark is distinctive by deciding if it is either inherently distinctive or has developed secondary meaning. I address this analysis second.

The entirety of plaintiff's distinctiveness argument is that the letter "S" is a "truly distinctive mark because consumers in the . . . professional sound industry recognize this mark as that of the [p]laintiff." (Pl.'s Mem. at 20–21). In other words, plaintiff argues that the letter "S" as it uses it is capable of distinguishing its products because it in fact does so. Plaintiff offers no evidence in support of this proposition, save inadmissible hearsay testimony of two of its employees. (*See* Perez Decl. ¶ 7; Fill Decl. ¶ 5). The testimony that "over the years customers have commented on our use of the letter S, and have come to say that they recognize products using this system as coming from us" (Fill Decl. ¶ 5; *see also* Perez Decl. ¶ 7 (similar)) relies on out-of-court statements to prove the truth of the matter asserted: customers identify plaintiff's products by the "S." *See* Fed. R.Evid. 801. Such hearsay statements are inadmissible at trial and, accordingly, are insufficient to withstand a Rule 56 motion. Fed.R.Civ.P. 56(e); *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir. 1991).

PSS has failed to show that the letter "S" is capable of distinguishing plaintiff's goods because it in fact does identify plaintiff as the source of the goods; therefore, I turn to an analysis of the mark's distinctiveness. A mark can be distinctive if it is either inherently distinctive or has developed secondary meaning. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–11, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

A mark is inherently distinctive if "its intrinsic nature serves to identify a particular source." *Id.* at 210, 120 S.Ct. 1339. In the context of word marks, courts have analyzed whether a mark's intrinsic nature serves to identify a source using a test originally formulated by Judge Friendly, "in which word marks that are 'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent) are held to be inherently distinctive." *Id.* at 210–11, 120 S.Ct. 1339, *citing Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10–11 (2d Cir.1976). Marks that are merely descriptive of a product or are a generic term for a product are not inherently distinctive. *Abercrombie & Fitch Co.*, 537 F.2d at 9–10. These categories, however, bear less relevance where the mark at issue is a naked, unadorned letter.

Here, plaintiff suggests that its trademark may be categorized as "arbitrary." (*See* Pl.'s Mem. at 21). An arbitrary mark is a mark that has a dictionary meaning that does not describe the product. *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). An arbitrary mark uses a common word in an unfamiliar way. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir.1999). It is commonly accepted that arbitrary marks are considered inherently distinctive, *Abercrombie & Fitch Co.*, 537 F.2d at 11; *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), but this idea cannot be applied blindly to hold that any mark that arguably is arbitrarily employed is a valid trademark entitled to protection. Reliance on these categories is misplaced in the context of single letters. A single letter can never be other than "arbitrary," *i.e.*, it could not be considered a generic term for a product or merely descriptive of the product to which it is associated.

The purpose of the arbitrary classification is a method for determining whether a mark is distinctive and can serve to identify a source of a product. The ultimate question is always whether a mark "is capable of distinguishing [one's] goods from those of others." *Two Pesos*, 505 U.S. at 767, 112 S.Ct. 2753. Here, plaintiff has not shown that its use of a plain, unadorned letter of the alphabet is capable of distinguishing its goods from goods of others. Plaintiff has not created a design for the letter "S," nor does it create any specific, consistent appearance for the letter; rather, the "S" is written in plaintiff's standard font for invoices or in the handwriting of whichever employee happened to write the catalog number. The letter is not featured prominently on the documents; one has to search for the letter to even find it. PSS makes no effort to make

the letter "S" distinctive in any way such that a customer would notice it and eventually associate the letter with PSS. Finally, PSS does not use the letter "S" in any advertising or promotional materials targeted to an outside audience, nor anywhere on its website; rather, the "S" is used on internal documents and packaging—items customers likely only see once they have already purchased PSS's goods. PSS has failed to present any evidence to support its argument that the naked letter "S" as PSS uses it is inherently distinctive and capable of distinguishing its goods from goods of others.

Where a party fails to establish a mark is inherently distinctive, it may be entitled to protection if the mark has acquired secondary meaning, *i.e.*, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Plaintiff has submitted no evidence supporting its allegation that the relevant consumers have accepted the letter "S" as a source identifier, instead relying on inadmissible hearsay. (*See* Pl.'s Mem. at 21; Perez Decl. ¶ 7; Fill Decl. ¶ 5).

Protecting the letter "S" as a trademark in this case would not serve the purpose of the Lanham Act, which is to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers. National protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Park 'N Fly v. Dollar Park & Fly*, 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (citing S.Rep. No. 1333, 79th Cong., 2d Sess., 3–5 (1946)). Where

the owner of the alleged trademark has made no effort to associate its reputation with the mark, and the mark has no inherent capacity to distinguish itself to consumers, a mark will not be protected under the Lanham Act.

### ii. *Is There a Likelihood of Consumer Confusion?*

██ Even if the letter "S" as used by PSS were a valid trademark entitled to protection, no reasonable trier of fact could find a likelihood of consumer confusion, the second element of a false designation of origin claim.

██ Courts apply the well-established *Polaroid* factors to determine whether a likelihood of confusion exists: (1) strength of plaintiff's mark, (2) similarity of plaintiff and defendants' marks, (3) competitive proximity of the products, (4) likelihood that plaintiff will "bridge the gap" and offer a product like defendants', (5) actual confusion, (6) defendants' good faith, (7) quality of defendants' product, and (8) sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961). The application of these factors is not mechanical, and no single factor is determinative. *Plus Prods. v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1004 (2d Cir.1983); *Clinique Labs., Inc. v. Dep Corp.,* 945 F.Supp. 547 (S.D.N.Y.1996). In applying these factors, a court "should focus on the ultimate question of whether consumers are likely to be confused." *Paddington Corp. v. Attiki Imps. & Distribs. Inc.,* 996 F.2d 577, 584 (2d Cir.1993).

### a. *Strength of the Mark*

██ Plaintiff's mark is weak. The strength of a mark is "its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960–61 (2d Cir.1996). The strength of a mark depends on its inherent distinctiveness and its distinctiveness in the marketplace. *Brockmeyer v. Hearst Corp.,* 248 F.Supp.2d 281, 294 (S.D.N.Y. 2003). The inherent distinctiveness of a mark is a similar inquiry to whether a mark is distinctive and thus protected under the Lanham Act. *Sports Authority,* 89 F.3d at 961 n. 1. A mark's distinctiveness in the marketplace examines the extent to which the mark in fact is known in the marketplace. *Brockmeyer,* 248 F.Supp.2d at 295.

As discussed above, the letter "S" as used by PSS—naked, unadorned—is not inherently distinctive. Furthermore, PSS fails to present any concrete evidence to show that its mark is distinctive in the marketplace; its failure to submit evidence showing consumers associate its mark with its product suggests that the mark is not in fact known in the marketplace. *Brockmeyer,* 248 F.Supp.2d at 295. For these reasons, PSS's mark is a weak mark, and defendants' use of it is not likely to confuse consumers.

### b. *Similarity*

██ Second, although the marks are similar in appearance, that similarity is not likely to confuse consumers in this case. In examining similarity of marks, a court considers "two key questions: 1) whether the similarity between the two marks is likely to cause confusion and 2) what effect the similarity has upon prospective purchasers. In deciding whether the marks are similar as used, we do not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace." *Sports Authority,* 89 F.3d at 962. Plaintiff relies entirely on a facial comparison of the marks, asserting they are identical, and therefore similar and likely to cause confusion, without mention of how the marks are used in the marketplace.

In this case, the marks are similar in appearance, but their similarity does not show a likelihood of consumer confusion. The marks are similar only in the sense that both employ an unadorned, naked capital letter "S." They are not identical, as plaintiff alleges, because defendant makes some attempt at adorning the "S," using bold-faced font, in contrast to plaintiff's use of a standard font or handwritten lettering.

Furthermore, when viewed in context of their use, the similarity ceases. PSS uses the letter "S" on packages, invoices, and documents accompanying shipments, whereas defendants use the "S" on their website. Defendants' website clearly says "Gotham Sound" in large print, and a consumer must type in Gotham's specific URL to access defendants' website. In other words, the context in which a consumer would see defendants' use of the letter "S" is one in which the consumer is aware that she is viewing Gotham's products. The use of the letter "S" by defendants in a different presentation than plaintiff (website rather than documents), where the context alerts consumers to defendants as origin of the products, weighs against a finding that the marks are similar and likely to cause consumer confusion. *See C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir. 1985) (size, layout, design, and logotype of two titles reduced potential for confusion under the similarity of mark analysis); *Brockmeyer v. Hearst Corp.*, 248 F.Supp.2d 281, 296 (S.D.N.Y.2003) (context of use of letter "O", including title of defendant's magazine accompanying mark, tends to differentiate marks and reduce similarity). .

### iii. *Proximity of the Products*

The proximity of the products does not create a likelihood of confusion.

This factor examines "whether, due to the commercial proximity of the competitive products, consumers may be confused as to their source." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir.1988); *Clinique Labs. Inc. v. Dep Corp.*, 945 F.Supp. 547, 553 (S.D.N.Y.1996). In assessing commercial proximity, courts should compare all relevant aspects of the products, including price, style, intended uses, target clientele, and channels of distribution. *Brockmeyer*, 248 F.Supp.2d at 296. Here, the products are in the same general market and targeted to the same consumers, but the channels of distribution in which the marks are used differ. PSS uses the mark on internal documents emanating from its physical store, while defendants use it on their website. Thus, this is not a case where proximity weighs strongly in plaintiff's favor, *e.g.*, where the products are sold in the same physical location and consumers are presented with the products simultaneously. *See e.g., Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474 (2d Cir.1996). Plaintiff does not show that the sale locations are geographically close, *see Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d Cir.2003), or argue that plaintiff's consumers might accidentally enter defendants' website. Because the consumer will only be presented with defendants' products if she intentionally enters defendants' store or defendants' website, the likelihood of confusion over the origin of defendants' goods, based on defendants' use of the letter "S" in cataloguing those goods, is slim. Therefore, while there is a proximity of the products, this factor weighs only slightly in plaintiff's favor, if at all.

### iv. *Likelihood that Plaintiff Will Bridge the Gap*

The fourth factor considers whether the plaintiff will "bridge the gap" and enter

defendants' business. *Sports Authority*, 89 F.3d at 963. This factor recognizes "the senior user's interest in preserving avenues of expansion and entering into related fields." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 504 (2d Cir.1996) (citation omitted). Here, the parties already compete in the same market. Therefore, the question of whether plaintiff will "bridge the gap" is irrelevant. *Paddington Corp. v. Attiki Imps. & Distribs.*, 996 F.2d 577, 586 (2d Cir.2003) (likelihood of bridging the gap irrelevant where parties already compete in the same market); *accord Robot Wars LLC v. Roski*, 51 F.Supp.2d 491, 494 n. 3 (S.D.N.Y.1999).

### v. Actual Confusion

The fifth factor is actual confusion, meaning "consumer confusion that enables a seller to pass off his goods as the goods of another." *Sports Authority*, 89 F.3d at 963 (citation omitted). Plaintiff makes no effort to present evidence of actual confusion, merely stating that "this factor is neutral but is still under investigation." (Pl.'s Mem. at 22). Plaintiff has raised no triable issue of fact concerning actual confusion. This factor weighs in defendants' favor and against a finding of likelihood of confusion.

### vi. Good Faith

The sixth factor examines defendants' good faith in adopting the mark, asking "whether [a] defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir.1991) (citation omitted). Plaintiff makes no attempt to show defendants' bad faith, but rather makes sweeping allegations without citing any evidence on the record. (*See* Pl.'s Mem. at 22 ("Bad faith is shown by

the defendants' taking of customer lists, Guzzi's breach of his secrecy agreement, failure to pay bills in a timely manner, and defamatory statements made while still in the plaintiff's employ.")). This factor weighs in defendants' favor.

### vii. Quality of Products

The seventh factor, quality of defendants' products, asks "whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir.1995). Here, the parties sell the same products. Plaintiff concedes that "this factor is neutral." (Pl.'s Mem. at 22).

### viii. Sophistication of the Buyers

In evaluating the sophistication of the buyers, "the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone." *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (*quoting* 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 81.2, at 577 (3d ed.1969)). Plaintiff's entire argument on this point is that "[t]his factor is neutral." (Pl.'s Mem. at 22).

To the contrary, PSS has made clear that its buyers are a "small, very close knit community of persons" engaged in a specialized profession of on-location sound recording. (Pl.'s Mem. at 2). The equipment they are buying from the parties is "very expensive, and the conditions for their use highly specialized." (Topham Decl. ¶ 3). These are not ordinary consumers casually purchasing inexpensive products, more likely confused by similar trademarks, *see Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d

Cir.2003), but rather are sophisticated professionals likely to take great care in purchasing the expensive equipment the parties sell. Therefore, the sophistication of the buyers weighs against the likelihood of their confusion.

### ix. *Aggregate Assessment*

Overall, the *Polaroid* factors in favor of defendants strongly outweigh those in favor of plaintiff. Weighed as a whole, in light of the overall assessment of the likelihood of consumer confusion, the factors show that no reasonable trier of fact could conclude that there is a likelihood of consumer confusion because of defendants' use of the letter "S." Therefore, plaintiff's Lanham Act claim for false designation of origin fails as a matter of law.

### D. *State Law Claims*

█ The Court need not consider PSS's state law claims. In dismissing the Lanham Act claims, the Court has the discretion whether to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Reese Publ'g Co. v. Hampton Int'l Communications, Inc.,* 620 F.2d 7, 13 (2d Cir.1980) (holding that when a Lanham Act claim is dismissible upon motion, state law claims should be dismissed without prejudice). The Court declines to exercise jurisdiction over such claims. Accordingly, PSS's state law claims are hereby dismissed without prejudice to re-filing in state court.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to plaintiff's Lanham Act claims, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims. The Clerk of the Court shall enter judgment in favor of defendants dismissing the complaint, with prejudice as to the Lanham Act claims and without prejudice as to the state claims.

SO ORDERED.